**Adolph HAMMONS, Jr., Plaintiff,**

**v.**

**Donald F. SCOTT, Chief of Police, City and County of San Francisco, State of California, et al., Defendants.**

**No. C–75–0846 WHO.**

United States District Court,
N. D. California.

Aug. 10, 1976.

See also, D.C., 423 F.Supp. 625.

Thomas W. Pulliam, Jr., San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for plaintiff.

James R. Browning, Jr., U.S. Atty., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for Federal defendants.

Thomas M. O'Connor, City Atty., John A. Etchevers, Deputy City Atty., San Francisco, Cal., for Donald F. Scott.

Kenneth C. Young, Deputy Atty. Gen., San Francisco, Cal., for State defendant.

Before SNEED, Circuit Judge, and EAST and ORRICK, District Judges.

## OPINION

■ This case is but another in a growing body of law presenting the question as to what, if any, restraints should be imposed upon the practices of public agencies regarding the maintenance and dissemination of arrest records of persons who were never convicted of the crimes for which they were arrested. The issues raised have been described as a "particularly sensitive area of law, concerning the developing relationship between values of individual privacy and the record-keeping functions of the executive branch". *Tarlton v. Saxbe,* 165 U.S.App.D.C. 293, 507 F.2d 1116, 1121 (1974). However, by its opinion of March 23, 1976, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court has snuffed out the short life of this action. For the reasons hereinafter stated, we dismiss the claims against the city and state defendants. In an accompanying opinion, the claims against the federal defendants are likewise dismissed.[1]

### I.

Plaintiff, Adolph Hammons, Jr., a black retired airman who served twenty-one years in the United States Air Force, and is now a manager of an apartment house, was arrested by the San Francisco Police De-

1. The complaint in this action challenges, *inter alia,* the constitutionality of the state practice of maintaining and disseminating arrest records of persons never convicted of any crime arising out of the arrest and prays for injunctive relief restraining the continuation of such practice. It appearing that this constitutional challenge to various state statutes and administrative regulations required the formation of a district court of three judges, a panel was duly convened to consider the matter. 28 U.S.C. §§ 2281–2284. Since the challenge to the local practices regarding the maintenance and dissemination of arrest records is closely

connected to the attack on the state regulatory scheme, it was also considered by the three-judge panel. *Cf. Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Remaining issues in the case, involving the federal defendants, were resolved by a single judge. *See, Gilmore v. Lynch,* 400 F.2d 228, 231 (9th Cir. 1968), *cert. denied,* 393 U.S. 1092, 89 S.Ct. 854, 21 L.Ed.2d 783 (1969); C. Wright, *Handbook of the Law of Federal Courts* 191 (2d ed. 1970).

partment on March 5, 1974, after a neighbor complained he had fired a gun at her. Taken to the San Francisco City Jail he was booked on a charge of assault with a deadly weapon, fingerprinted, and incarcerated for one day. The next day he was released from custody and all charges against him were subsequently dropped. Prior to this arrest he had no record. He brings this action seeking a judgment declaring that the maintenance of a record of arrest by the defendants, and any of them, where the person arrested was never convicted of, nor pleaded guilty or *nolo contendere* to, any crime arising from the conduct for which such arrest was made and where criminal proceedings against such person arising from such conduct have been terminated, is unlawful and unconstitutional. He further seeks to enjoin the defendants, and each of them, from disseminating to any person, agency, or other entity, the record of his arrest, and to enjoin such defendants to expunge and destroy all records, including those now existing and those to be made in the future, of arrests of persons never convicted of any crime arising from the conduct for which such arrests were made and against whom criminal proceedings arising from such conduct have been terminated.[2]

Plaintiff contends that the record of his arrest was forwarded by the San Francisco Police Department to the Bureau of Identification and Information of the Department of Justice of the State of California and to the Federal Bureau of Investigation (FBI). The plaintiff has named as defendants the Chief of Police of San Francisco, the Attorney General of California, who is responsible under state law for criminal offender record information, the Attorney General of the United States, who is responsible under federal law for the collection and dissemination of criminal records, and the Director of the FBI, to whom the task of federal criminal identification record-keeping has been delegated. *See,* Cal.Penal Code §§ 11077, 11100 *et seq.*; 28 U.S.C. § 534; 28 C.F.R. § 20.1 *et seq.* The plaintiff alleges that his attorney, through the San Francisco Police Department, has requested that both the state and federal agencies expunge the arrest record and that this request was refused. Plaintiff claims that the failure to expunge the arrest record violates rights insured by the Due Process and Equal Protection Clauses of the federal Constitution. He further claims that the maintenance and dissemination of his arrest record infringes on a constitutional right to privacy. Plain-

---

**2.** It is important to note that plaintiff in this action has launched a wholesale, broadside attack on the use of arrest records which goes far beyond the challenges addressed by other courts. Unlike the situation in some other cases, plaintiff in the instant action is not seeking expungement of his arrest record after *acquittal* on the criminal charges arising out of the arrest or after dismissal of the case at trial. *See, e. g., Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972); *Eddy v. Moore,* 5 Wash.App. 334, 487 P.2d 211 (1971).

Nor is plaintiff claiming that his arrest was illegal. *See, e. g., Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); *Bilick v. Dudley,* 356 F.Supp. 945 (S.D.N.Y.1973); *Hughes v. Rizzo,* 282 F.Supp. 881 (E.D.Pa. 1968). Indeed, plaintiff asserts that the issue of whether or not the March 5, 1974, arrest was based upon probable cause or was otherwise unlawful is not material.

Moreover, plaintiff seeks to challenge the use of arrest records for law enforcement purposes, a point which has generally been conceded by persons attempting to limit the dissemination of such information for other purposes, including employment and licensing. *See, Utz v.*

*Cullinane,* 172 U.S.App.D.C. 67, 520 F.2d 467, 475, 496 (1975).

Finally, plaintiff here seeks wholesale expungement of the arrest records of persons never convicted of a crime for which they were arrested. This requested relief goes far beyond what has hitherto been asked of the courts. *See, Utz v. Cullinane, supra,* at 474–476.

Expungement is certainly a remedy in the judicial arsenal to protect individuals from unjustified governmental interference. However, the power to expunge arrest records has generally been exercised only in exceptional circumstances, on a case-by-case basis, where the maintenance of such records would be fundamentally unfair, such as where the arrest was illegal or the product of harassment. *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1976); *United States v. Linn,* 513 F.2d 925 (10th Cir. 1975); *Kowall v. United States,* 53 F.R.D. 211 (W.D. Mich.1971). Some courts have refused to order expunction even after acquittal except in exceptional circumstances. *United States v. Dooley,* 364 F.Supp. 75 (E.D.Pa.1973); *but see, United States v. Kalish,* 271 F.Supp. 968 (D.C. P.R.1967).

tiff contends he is suffering irreparable injuries as a result of such violations, including impediments to employment and licensing, and the increased likelihood of police surveillance.

## II.

### A.

Plaintiff's challenge to the constitutional validity of the state and local practices regarding the maintenance and dissemination of arrest records required convening a three-judge court.[3] The panel did not consider the issues involving the federal defendants. The claims involving the federal defendants were resolved by a single judge. After the case was submitted to the three-judge court following a hearing on cross-motions for summary judgment, the Supreme Court decided *Paul v. Davis, supra,* which we believe is dispositive of the two main issues raised by the complaint in this case.

 Preliminarily, we consider whether the judge-made doctrine of abstention should be applied to the case at bar. As Justice Stewart pointed out in *Kusper v. Pontikes,* 414 U.S. 51, 54–55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973), the doctrine is to be applied sparingly and only in "special circumstances":

> "The paradigm of the 'special circumstances' that make abstention appropriate is a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modi-

---

**3.** Plaintiff's attack is aimed in part at the California statutory scheme governing the collection, control, and dissemination of criminal offender record information. *See,* Cal.Penal Code §§ 11075–11081, 11100 *et seq.,* § 13010 *et seq.,* § 13100 *et seq.* (Stats.1973, ch. 992, § 1 operative July 1, 1978).

Under the supervision of the State Attorney General, the California Department of Justice maintains centralized records and data for law enforcement purposes. These records are in part supplied by and are made available to local law enforcement agencies and others for specified purposes, including criminal investigations. These records include crime reports, stolen property reports, modus operandi files, convict identification records, concealed weapons permits and sales records, coroner's reports, fingerprints, and arrest records. *See,* Cal.Penal Code § 11110 and following.

The term "arrest records" refers to the master record sheet maintained under the arrested person's name by the Bureau of Identification and Information of the California Department of Justice which is commonly known as the "arrest record", "criminal record sheet", or "rap sheet". *See,* Cal.Penal Code § 11120. This arrest record includes the name of the person arrested, any other names by which the person is known, the person's physical description, fingerprint classification, social security number, driver's license number, FBI number, and State Bureau of Criminal Identification and Investigation (CII) number. Entries *made on the* arrest record include a summary of each arrest which include the location of the arrest, the arresting agency, the date of arrest, and the crime for which the arrest was made. The law requires that one or more of the twenty-five dispositions which may be made of the arrest be entered on the arrest record. *See,* Cal.Penal Code §§ 11115, 11116 and 11116.6. The place of any imprisonment and date of release therefrom are also entered on the arrest record. Record checks for employment purposes are noted on the arrest record.

Local arrest records, maintained within the jurisdiction where an arrest is made, contain similar information. The information retained by the San Francisco Police Department, the agency responsible for plaintiff's arrest, includes name, aliases, age, race, height, weight, marks and scars, place of birth, persons arrested with the arrestee, charges, including rebookings, final disposition, pictures, and fingerprints.

Dissemination of the criminal offender record information maintained by the Bureau of Identification and Information is limited to law enforcement agencies and state officials for limited purposes. Dissemination of such centrally-maintained arrest records is governed by Section 11105 of the California Penal Code. This section authorizes the State Attorney General to furnish summary criminal offender history information to:

" * * * peace officers, district attorneys [prosecuting city attorneys], probation officers, and courts of the state, to United States officers or officers of other states * * * or peace officers of other countries * * * and to any public defender or attorney representing such person in proceedings upon a petition for certificate of rehabilitation and pardon * * *."

or any:

" * * * state agency, officer, or official when needed for the performance of such agency's, officer's, or official's functions."

Local arrest records retained by the San Francisco Police Department are disseminated only to those authorized to receive such records by state law.

fy the necessity of reaching a federal constitutional question. *Zwickler v. Koota,* 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444; *Harrison v. NAACP,* 360 U.S. 167, 176–177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152. Abstention in such circumstances not only serves to minimize federal-state friction, but also avoids premature and perhaps unnecessary constitutional adjudication. *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50. But the doctrine of abstention 'contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.' *Ibid.,* 85 S.Ct., at 1182. Where, on the other hand, it cannot be fairly concluded that the underlying state statute is susceptible of an interpretation that might avoid the necessity for constitutional adjudication, abstention would amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the constitution of the United States,' *Robb v. Connolly,* 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed.2d 542."

We are of the view that the California statutes and regulations here involved cannot be read so as to avoid the necessity of constitutional adjudication.[4] So we turn immediately to the application of the holding in *Paul v. Davis, supra,* to the case at bar.

### B.

Petitioner, Paul, Chief of Police of Louisville, Kentucky, widely distributed a flyer containing the names and photographs of persons suspected of being shoplifters for the purpose of alerting local merchants to "subjects known to be active in this criminal field". The flyer consisted of five pages of "mug shot" photographs. The danger posed by these individuals was trumpeted by the heading on each page proclaiming those depicted below to be "Active Shoplifters". Included in the list was the name and "mug shot" of respondent, Davis, who had never been convicted of any criminal activity, and whose only "offense" was having once been arrested on a shoplifting charge. Shortly after the circulation of the flyer, the charges against Davis were dismissed.

Davis then sued Paul and other state officials under 42 U.S.C. § 1983, claiming that the defendants had deprived him of rights secured by the Constitution of the United States and that such deprivation was achieved under color of law. *See, Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Specifically, Davis contended that the inclusion of his name and photograph in the flyer impermissibly deprived him of "liberty" and "property" protected by the Due Process Clause of the Fourteenth Amendment. His complaint asserted that the "active shoplifter" designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly being apprehended, and would seriously impair his future employment opportunities.

---

**4.** In an attempt to distinguish *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff submits that the governmental action challenged herein has "significantly altered his status as a matter of state law" (*Id.* at 708, 96 S.Ct. at 1164) in that such action has adversely affected his right to privacy conferred by Article 1, Section 1, of the California Constitution. We are cognizant that the applicability of those state constitutional provisions in circumstances similar to those presented here is a question presently pending before the California Supreme Court in *Loder v. Municipal Court,* 132 Cal.Rptr. 464, 553 P.2d 624 (1976). Plaintiff urges that this Court defer its decision upon the due process claim raised herein until *Loder* has been decided by the California Supreme Court. However, in light of the majority opinion in *Paul,* we decline to abstain. We believe that no state court decision on state grounds would alter the federal constitutional claims pressed here. Even if the state courts were to recognize a state-conferred right to privacy applicable to arrest records, *Paul* suggests the vindication of such interests would lie with a state forum. Thus, in *Paul,* the Court ruled that the respondent's interest in reputation, protected by a state tort action, was not the kind of status or right the alteration of which would trigger federal due process guarantees. *Paul v. Davis, supra,* 424 U.S. at 711-714, 96 S.Ct. 1155.

Davis further alleged a violation of a "right to privacy guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments".

The Supreme Court ruled that Davis failed to state a claim for relief, characterizing Davis' alleged injury as "mere defamation" involving no infringement of constitutionally protected rights. *Paul v. Davis, supra,* 424 U.S. at 705–707, 96 S.Ct. 1155. The Court held that the claimed injuries to Davis' reputation invaded neither a "liberty" nor "property" interest guaranteed against state deprivation without due process of law. *Paul v. Davis, supra,* at 711–714, 96 S.Ct. 1155. The Court distinguished cases which seemingly recognized the protection of one's good name and reputation as "among the most cherished of rights enjoyed by a free people * * * falling within the concept of personal 'liberty' ". *Paul v. Davis, supra,* at 723, 96 S.Ct. at 1171 (Brennan, J., dissenting). *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Rosenblatt v. Baer,* 383 U.S. 75, 92, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (Stewart, J., concurring opinion); *Wieman v. Updegraff,* 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Joint Anti-Fascist Refuge Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); *see also, Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court interpreted these precedents as requiring due process guarantees where the governmental action not only damages an individual's reputation, but also adversely affects concrete employment opportunities or significantly alters a right or status recognized by state law. Notwithstanding Paul's allegation of impaired employment prospects, the Court found that the Due Process Clause was not applicable where the plaintiff sought to vindicate an interest in "reputation alone". *Paul v. Davis, supra,* 424 U.S. at 701–704, 96 S.Ct. 1155.

The Court in *Paul* similarly dismissed the claim that the defendant's actions infringed upon a constitutional right to privacy. The Court recognized that more specific constitutional guarantees create "zones of privacy" protected from unwarranted governmental intrusion. *See, Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). However, the Court found that Paul's claimed infringement of this right, based upon the publication of a record of an official act such as an arrest, was far afield from the more personal matters deserving of constitutional protection in this regard. Thus, the Court limited the right to privacy to areas described as "fundamental" or "implicit in the concept of ordered liberty"— matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. *Paul v. Davis, supra,* 424 U.S. at 711–714, 96 S.Ct. 1155.

The decision in *Paul* is grounded upon the perception that a contrary holding:

> " * * * would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment." *Paul v. Davis, supra,* at 699, 96 S.Ct. at 1159.

The Court declined to make the Fourteenth Amendment such a "font of tort law" to be superimposed upon whatever systems may already be administered by the state to redress actionable wrongs. *Paul v. Davis, supra,* at 698–701, 96 S.Ct. 1155.

### C.

In the case at bar, plaintiff seeks expungement of his arrest record, claiming that the maintenance and dissemination of arrest records of persons not convicted of, nor pleaded guilty or *nolo contendere* to, any crime arising from the arrest is unconstitutional. The theories upon which plaintiff seeks relief are (1) that maintenance and dissemination of such arrest records is violative of the constitutional right to privacy, (2) that the maintenance and dissemination of such arrest records is violative of constitutional due process, and (3) that the

**624**

maintenance and dissemination of such records is violative of the constitutional prohibition against racial discrimination. Although the facts in *Paul* are distinguishable from the case at bar, we believe that the theories underlying plaintiff's claims herein are so similar to those recently rejected by the Supreme Court that *Paul* effectively disposes of plaintiff's first two contentions.[5] As discussed *infra*, the third contention that maintenance and dissemination of such records is violative of the constitutional prohibition against racial discrimination is inapposite to the state and local scheme challenged herein. Moreover, the third claim has not been properly alleged.

Plaintiff's attempts to distinguish *Paul* are unpersuasive. First, plaintiff points out that the defendants in *Paul* acted pursuant to informal agreement independent of any statutory authorization, whereas in this case, the actions complained of are required by state legislation. However, any such distinction is not controlling since the critical fact, present in both cases, is that the state officials were acting "under color of law". *See, Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Second, the plaintiff here asserts that he has suffered damage to more than his "interest in reputation alone"; he seeks vindication of interests in employment, licensing, and certification opportunities on an equal basis with all other citizens who have not been found guilty of crimes. However, as noted, the plaintiff in *Paul* also claimed that the actions of the defendant impaired other interests, including employment possibilities. Thus, plaintiff's claim that the dissemination of his "rap sheet" impairs employment prospects and significantly alters his right to be free from racial discrimination in employment is unavailing.

Third, the plaintiff points out that in *Paul* the charges against Paul were still outstanding at the time of the circulation of the flyer, while in this case the criminal proceedings against plaintiff arising from his March 5, 1974, arrest had been terminated before the dissemination of his arrest record. However, in light of the holding in *Paul,* this is a distinction without a difference.

Finally, plaintiff notes that he may or may not have pleaded a state cause of action for defamation, whereas the Court in *Paul* characterized the allegations there as stating a classic claim for this tort. The existence or the absence of a state remedy is irrelevant in determining whether plaintiff has stated a federal claim. *Monroe v. Pape, supra.*

Thus, we find that the right to privacy and due process theories asserted by plaintiff in the instant action fall squarely within the holding of *Paul.*

■ Plaintiff's third claim, based upon the alleged racial discriminatory effect of the practices challenged herein, must also be dismissed as against the state and local defendants. Plaintiff's claim in this regard is founded upon case authority concerned with the effect of arrest records (without convictions) upon employment opportunities for blacks. *See, Gregory v. Litton Systems, Inc.,* 316 F.Supp. 401 (C.D.Cal.1970), *modified on other grounds and aff'd*, 472 F.2d 631 (9th Cir. 1972); *Utz v. Cullinane,* 172 U.S.App.D.C. 67, 520 F.2d 467, 481–482 (1975). Such cases are inapposite under the California scheme restricting the dissemination of such records for employment, certification, and licensing purposes, except in certain narrowly-specified circumstances not applicable to plaintiff. Cal.Labor Code § 432.7; Cal.Penal Code § 11105. Moreover, plaintiff has failed to allege purposeful and intentional discrimination by the state and local defendants. Such an allegation is necessary to establish a violation of constitutional rights resulting from the practices challenged herein. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *see also, Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943); *Yick Wo v. Hopkins,* 118 U.S.

---

**5.** Plaintiff's claim that the maintenance and dissemination of arrest records erodes the constitutional presumption of innocence must also fall after *Paul. See, Paul v. Davis,* 424 U.S. 693, 724–727, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (Brennan, J., dissenting opinion).

356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

The motions for summary judgment of the city and state defendants are GRANTED. Plaintiff's motion for summary judgment is DENIED, and the complaint against the city and state defendants is DISMISSED.