HOWARD G. BJORKLUND, Administrator Law Enforcement ServicesDivision Department of Justice
You have asked my opinion on the following question:
 Does a circuit court in the State of Wisconsin have inherent authority to order expunction of criminal conviction records where sec. 973.015, Stats., is not applicable?
I have concluded for the reasons set forth below that it does not. *Page 116 
Section 973.015(1), Stats., entitled Misdemeanors, special disposition, provides as follows:
 (1) When a person under the age of 21 at the time of the commission of an offense for which the person has been found guilty in a court for violation of a law for which the maximum penalty is imprisonment for one year or less in the county jail, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition.
A crime for which the maximum penalty is stated as "imprisonment for not more than one year in the county jail,"i.e., not in the state prison, is by definition a misdemeanor. Secs. 939.60 and 973.02, Stats.
This statute specifically grants to courts in this state power to expunge misdemeanor convictions of certain defendants provided there is compliance with the requirements and qualifications contained in that statute. The only other expunction statute in this state, sec. 165.84(1), Stats., is of very limited application. It provides for the return of fingerprint records to persons arrested or taken into custody "and subsequently released without charge, or cleared of the offense through court proceedings," i.e., expunction of exonerated persons' fingerprint records.
These two statutes are the only legislative statements regarding expunction of criminal records in this state. Because there is, therefore, no explicit legislative provision of authority in the circumstances you raise, an affirmative answer to your question may only rest on an analysis of the inherent or implied powers of a court.
Our supreme court has recently discussed the nature of such inherent powers at length in State v. Braunsdorf, 98 Wis.2d 569,286 N.W.2d 14 (1980). Because of its value to this discussion, the court's comprehensive analysis merits quotation:
 We had occasion to review our previous statements on the doctrine of inherent power in Jacobson v. Avestruz, 81 Wis.2d 240, 244-46, 260 N.W.2d 267
(1977), wherein it is stated: *Page 117 
 "This court has previously discussed the scope of the inherent powers of the courts of this state, . . . . In State v. Cannon, 196 Wis. 534, 536-37, 221 N.W. 603 (1928) this court summarized the nature of the powers inherent to the courts as follows"
 "`In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. In In re Court Room, 148 Wis. 109, 121, 134 N.W. 490, it was said:
 "`"The authorities, insofar as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it."
 "`In In re Bruen, 102 Wash. 472, 172 Pac. 1152, the supreme court of Washington said:
 "`"The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers."'
 "Since State v. Cannon, this court has made reference to the inherent powers of the courts in various contexts. In In re Cannon, *Page 118 206 Wis. 374, 393, 240 N.W. 441 (1932), this court discussed the concept of the judiciary's inherent powers and the immunity of these powers from legislative abrogation. In Latham v. Casey King Corp., supra at 314-15, this court stated:
 "`It is considered well established that a court has the inherent power to resort to a dismissal of an action in the orderly administration of justice. The general control of the judicial business before it is essential to the court if it is to function. "Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort." 14 Am. Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Supp., p. 77', (Emphasis supplied.)"
98 Wis.2d at 578-80.
Our supreme court then went on to point out what is learned from these cases and writings is that the inherent powers of a court are those powers without which the courts cannot properly function, that is, they are those powers which are necessary tothe very existence of the court as a court. Other jurisdictions have reached similar results. In In Re Integration of NebraskaState Bar Ass'n, 133 Neb. 283, 275 N.W. 265 (1937), the Nebraska Supreme Court stated that those powers are inherent which are essential to the dignity, functions and very existence of the courts as courts. In Brydonjack v. State Bar of California,208 Cal. 439, 281 P. 1018 (1929), the California Supreme Court held that the fact that courts have all the inherent or implied powers necessary to properly and effectively function and exist does not mean that the courts are independent of the Legislature in the exercise of those powers.
Your question then is distilled to the following:
Is the power to order expunction of criminal conviction records a power necessary to the very existence of our courts without which power they could not properly function? I conclude not. I do not perceive that the inherent power to destroy records of criminal convictions is in any way necessary to the efficient and orderly exercise of *Page 119 
jurisdiction or is any way essential to the continued existence of our courts. Those courts will continue, without that power, to exist, to exercise jurisdiction over subject matters and persons and to duly administer the law of this state.
There are also sound policy bases underlying the conclusion to not vest courts with the implied power to destroy records of criminal convictions. As one commentator has noted:
 Neutral identification information contained in the records, such as fingerprints and photographs, can be quite helpful to local police if the individual is ever under investigation again. Positive identification is often essential to link a suspect to a crime or to protect a person who is innocent. Also, imputational information such as the arrest notation can indicate a pattern of conduct that may be the basis for a future arrest or for a decision to press charges. If a rearrest is made, the arrest record may furnish facts concerning prior conduct which, although not sufficient to warrant conviction in the previous case, may still be useful to trained interpreters of records.
Comment, 38 U. Chi. L. Rev. 850, 854 (1971). See also Morrow v.District of Columbia, 417 F.2d 728 (D.C. Cir. 1969) and UnitedStates v. Kalish, 271 F. Supp. 968 (D.P.R. 1967).
It is notable that these statements were made in comments regarding the justification for retaining arrest records ofexonerated or uncharged arrestees. Such reasoning applies even more vigorously in the case of convicted criminals. In addition, criminal conviction records are of critical importance in considering questions involving bail and pretrial release (sec.969.01(4), Stats.), the habitual offender or repeater statute (secs. 973.12 and 939.62, Stats.), and sentencing in general.
Finally, although constitutional due process and privacy arguments are properly being raised in many contexts, (see, e.g., 1 LaFave Search and Seizure, 1.9 Expungement of Arrest Records (1978)) they have apparently simply not been accepted and applied to cases involving records wherein the persons were convicted. For example, in Alderman v. Shiawassee County Sheriff, *Page 120 66 Mich. App. 649, 653, 239 N.W.2d 696, 698 (1976), it is stated: "Plaintiffs have not shown us any case, nor has our independent research disclosed any case, in which an individual, after conviction, had a claim based upon privacy to return of arrest records."
In fact, at least one court has rejected such constitutional arguments raised in support of claims for expunction of records in regards to a non-convicted person on both due process and privacy grounds. Hammons v. Scott, 423 F. Supp. 618 (N.D.Cal. 1976) (relying on Paul v. Davis, 424 U.S. 693 (1976)).
Therefore, it is my opinion that circuit courts in the State of Wisconsin do not possess the inherent or implied powers, in the absence of authorizing or enabling statutes, to order the destruction or expunction of criminal conviction records.
BCL:JM