STATE of Wisconsin, Plaintiff-Appellant,

v.

Sharon BRAUNSDORF, Defendant-Respondent-Petitioner.

Supreme Court

No. 79–095–CR. *Argued September 2, 1980.—Decided October 28, 1980.*

(Also reported in 297 N.W.2d 808.)

For the respondent-petitioner the cause was argued by *Glenn L. Cushing,* assistant state public defender, with whom on the brief was *Harold L. Harlowe* of Madison.

For the plaintiff-appellant the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J. We granted review in order to consider whether the trial courts of this state have the inherent authority to dismiss with prejudice a criminal case prior to the attachment of jeopardy. We conclude that, except for those situations in which a defendant's constitutional right to a speedy trial is implicated, the trial court possesses no such inherent authority; and we therefore affirm the decision of the court of appeals.

Defendant-respondent-petitioner Sharon Braunsdorf (defendant) was charged with welfare fraud; and after a preliminary examination, the case was scheduled for a jury trial as the number two case on the calendar for December 19, 1978. On the morning of December 15, 1978, the trial court was informed that the number one case for December 19, 1978, had been disposed by plea. The judge then ordered the assistant district attorney for Brown county and the defendant's counsel be informed that this case had become the number one case for December 19, 1978, and that the matter was expected to proceed to trial at 9 a.m. On the morning of December 18, 1978, the assistant district attorney, without informing the trial court, directed the clerk of courts to call off the jury panel scheduled for the following morning. Later that afternoon, after approximately twenty-eight of

the thirty-two jurors had been advised not to appear, the trial court learned about the action of the assistant district attorney and because of the late hour concluded that an effort to recall them would be unavailing. He informed counsel for both sides that the next morning he would "seriously consider . . . any motion that was made on behalf of the defendant to dismiss this matter and to dismiss it with prejudice."

On the morning of the trial date, December 19, 1978, the assistant district attorney, Royce Finne, moved the court for an adjournment. In response to the court's inquiries, Finne stated that although he had been aware of the forthcoming trial date since late November, he had not undertaken any action to contact witnesses and place them on standby or otherwise to prepare for the trial of the case. He also stated that ordinarily preparation for trial begins some seven to ten days before the scheduled date, but in this case no such preparation was made because he had been informed by a person in his department that the case which had been scheduled as the number one case was "firm" and its early disposition was not anticipated. The court then inquired as to the actions undertaken by the assistant district attorney to prepare for trial after learning, on December 15, 1978, that this case had been moved up to the number one case. Finne indicated he had attempted to locate certain records in possession of the Department of Industry, Labor and Human Relations but that they were not available except, perhaps, in the form of a computer printout which could possibly be available by Monday, December 18, the day before trial. With respect to a representative from a local bank who was one of two critical witnesses not then present, Finne stated that in view of his experience, there would not have been sufficient time for the necessary bank records to be located, so he did not contact the witness at all.

Neither critical witness was subpoenaed. The trial court denied the motion for adjournment, whereupon the assistant district attorney moved to dismiss the case "[b]ased on the discretion which lies in the District Attorney's office to prosecute or not to prosecute a matter."

The trial court requested argument from counsel on whether the case should be dismissed with or without prejudice, and the following colloquy ensued:

"*Mr. Finne:* That is not the District Attorney's motion, Your Honor. We do not recognize the Court's authority to do that.
"*The Court:* You're just moving to dismiss?
"*Mr. Finne:* Yes, we do not recognize the Court's authority to dismiss with prejudice."

The defendant took the position that the case should be dismissed with prejudice and that the trial court had the authority to do so. Upon the conclusion of the arguments of counsel, the trial court relying upon this court's opinions in *State v. Kenyon,* 85 Wis.2d 36, 270 N.W.2d 160 (1978); *State v. Stoeckle,* 41 Wis.2d 378, 164 N.W. 2d 303 (1969); and *Wittke v. State ex rel. Smith,* 80 Wis.2d 332, 259 N.W.2d 515 (1977), concluded "the position of the District Attorney in regard to dismissal should be granted. However, that dismissal is to be with prejudice."

The court of appeals concluded that, in the absence of statutory authority, a trial court did not possess the inherent power to dismiss a criminal case with prejudice on nonconstitutional grounds prior to the attachment of jeopardy, and it modified the order of dismissal accordingly. *State v. Braunsdorf,* 92 Wis.2d 849, 853–54, 286 N.W.2d 14 (Ct. App. 1979).

## I.

Prosecutors enjoy largely unfettered discretion in the initiation of criminal proceedings. *Sears v. State,* 94

Wis.2d 128, 133, 287 N.W.2d 785 (1980); *State v. Karpinski*, 92 Wis.2d 599, 607–08, 285 N.W.2d 729 (1979). In English common law that discretion extended to the entry of a *nolle prosequi* or voluntary dismissal,[1] the use of which was exclusively under the control of the attorney general, *Rex v. Cranmer*, 1 Ld. Raym. 721, 91 Eng. Rep. 1381 (K.B. 1701), and acceptance by the court was obligatory, *R. ex rel. Gregory v. Allen*, 1 B. & S. 850, 121 Eng. Rep. 929 (Q.B. 1862). The prosecutor's discretion to enter a *nolle prosequi* in a criminal case was subject only to the narrow exception, occurring infrequently in English cases, where the court sought to avoid "mischief or oppression," *King v. Webb*, 1 W. Bl. 460, 461, 97 Eng. Rep. 931 (1764), or to further the interests of justice, *Mervyn Broad*, 68 Crim. App. 281, 285 (1978),[2] in which situations the court may decline to accept the prosecutor's *nolle prosequi*.

The practice of using the *nolle prosequi* was carried to this country, but its use has become increasingly subject to the court's approval.[3] In *Guinther v. Milwaukee*, 217

---

[1] For a thorough discussion of this area, *see, State ex rel. Butler v. Moise*, 48 La. Ann. 109, 18 So. 943, 35 L.R.A. 701 (1895). *See also:* 1 Bishop's, *New Criminal Procedure*, secs. 1387–86, 843–47 (1895); 16 C.J. *Criminal Law*, secs. 778–90, 432–38 (1918).

[2] In *Broad* Lord Justice Roskill cited no authority in support of his conclusion that the trial judge was acting properly when he refused to permit the prosecutor to withdraw the case. *But see: R. v. Comptroller-General of Patents*, 1 Q.B. 909, 68 L.J. Q.B. 568, 574 (1899): "In a prosecution by one man against another for a crime the Attorney-General can, if he thinks fit, enter a *nolle prosequi*, and nobody can say anything to him as to whether he enters a *nolle prosequi* or not. He is supreme in that matter, and there is no appeal."

[3] *See, e.g.*, Fed. R. Crim. P. 48; Ariz. Rev. Stat., Rules of Crim. Proc. 16.5; Cal. Penal Code sec. 1386 (Deering); Ga. Code Ann. sec. 27–1801; Idaho Code Ann. sec. 19–3505; Minn. Stat. Ann., Rules of Crim. Proc. 30.01 (West); N.Y. Crim. Proc. Law sec. 210.40 (McKinney); Ohio Rev. Code Ann., Rules of Crim. Proc. 48 (Page); Or. Rev. Stat. sec. 135.757; 42 Pa. Cons. Stat. Ann.

Wis. 334, 258 N.W. 865 (1935), this court approved the action of a trial court denying the city attorney's motion to dismiss an ordinance violation charge and appointing counsel to continue on behalf of the city when the city attorney refused to participate further. That case was our initial recognition of the court's limited supervisory role over prosecutorial motions to dismiss. In *State v. Kenyon,* 85 Wis.2d at 45, we emphatically reaffirmed *Guinther* and removed any doubt whether its rule extended to criminal cases. It was there stated:

"In sum, we believe the holding in *Guinther* is clear and conclusive. Prosecutorial discretion to. terminate a pending prosecution in Wisconsin is subject to the independent authority of the trial court to grant or refuse a motion to dismiss 'in the public interest.' "

But we also set forth certain guidelines to ensure that a trial court's decision to deny a motion to dismiss is firmly grounded upon considerations of public interest.

### (A)

Against this background of considerable prosecutorial discretion, tempered by *Guinther* and *Kenyon,* we turn to the defendant's contention that trial courts possess an independent, inherent power to dismiss criminal cases with prejudice. First, we note, as did the court of appeals, that only sec. 976.05(1), Stats., gives trial courts the power to dismiss a case with prejudice. Otherwise, dismissals prior to the attachment of jeopardy are without prejudice. *See:* Secs. 968.03, 970.03, 970.04, 971.01(2). Second, also as noted by the court of appeals, 'here has been no claim in this case that the de-

sec. 8932 (Supp. 1980). *See also:* A.L.I. *Code of Criminal Procedure,* sec. 295 Commentary 895–97 (1931); 3 *Wharton's Criminal Procedure,* sec. 518 (12th ed. 1975).

fendant has been deprived of her constitutional right to a speedy trial. Therefore, the reliance of the trial court and the defendant on *State v. Stoeckle, supra,* is misplaced. In *Stoeckle* we stated:

"The right to a speedy trial is guaranteed by art. I, sec. 7 of the Wisconsin Constitution and the sixth and fourteenth amendments of the United States Constitution. Wisconsin recognizes the right to a dismissal with prejudice to the state if this right is violated, but such right accrues only after a defendant has taken affirmative steps to bring his case to trial." 41 Wis.2d at 384.

Our cases make it clear that the power to dismiss with prejudice contemplated in *Stoeckle* is not some latent or residual power which is invoked in the presence of a constitutional speedy trial violation. Rather, it is a power implicit in the speedy trial guarantee because it is necessary to the protection of "[t]he amorphous quality of the right." *See: Barker v. Wingo,* 407 U.S. 514, 522 (1972). Since that power exists only to safeguard a defendant's constitutional right to a speedy trial, in the absence of statutory authority it cannot be extended to effectuate other purposes.

We are left with three cases, *State v. Kenyon, supra, Wittke v. State ex rel. Smith, supra,* and *City of Madison v. Two Crow,* 88 Wis.2d 156, 276 N.W.2d 359 (Ct. App. 1979), which the defendant claims embody the proposition that a trial court may dismiss a criminal case with prejudice, prior to jeopardy.

In *Two Crow* the court of appeals summarily approved the dismissal of an ordinance complaint with prejudice. The court determined the defendant had been improperly detained because he had not been advised of his option to post either a bond or cash bail. This case was treated by the appellate court as one of first impression, and it cited no precedent for the result. We do not accept the conclusion of the court of appeals.

The defendant argues that unless *Kenyon* can be taken to authorize a dismissal with prejudice, then in situations such as the instant case, where a previous motion for continuance has been denied, a subsequent motion to dismiss granted without prejudice amounts to a continuance. In so doing, it is argued, the prosecutor may effectively circumvent the trial court's discretion to grant or deny the continuance. Even assuming the trial court granted a subsequent motion to dismiss, which under *Kenyon* it is not obligated to do, we do not concur in the defendant's conclusion that "the prosecutor has secured his continuance in any event." A continuance operates only as a temporary cessation of the proceedings, generally for a time certain, after which the matter resumes from the point at which it was adjourned. But a dismissal upon the motion of the prosecutor is not merely a temporary break in the proceeding; it is a complete termination of the matter which can only be recommenced by filing a second complaint and repeating all the procedures attendant upon the initiation of a criminal prosecution. Also, the granting of a continuance, including its duration, is committed exclusively to the sound discretion of the trial court. *State v. Wollman,* 86 Wis.2d 459, 273 N.W.2d 225 (1979) ; *State v. O'Connor,* 77 Wis.2d 261, 252 N.W.2d 671 (1977). In a dismissal, however, the burden is upon the prosecutor regarding reissue, and he bears the responsibility as well as the onus of his actions. Because of these differences, we are not convinced that a dismissal is the same as a continuance.

It is also argued that, should the trial court deny a motion to dismiss in a case where a continuance had previously been denied, thus forcing the case to trial, the resulting trial would be no more than a "sham" or "hollow ritual" which this court should not countenance and which a dismissal with prejudice under *Kenyon* could

avoid. But even assuming, as does the defendant, that the outcome of such a trial would necessarily be a dismissal on the merits for lack of evidence, we feel there is a purpose to be served by such a proceeding. We have often stated that in the discharge of the duties under sec. 59.47, Stats., a district attorney generally is answerable not to the courts or the legislature but to the people. *State v. Karpinski*, 92 Wis.2d at 608. In *State ex rel. Kurkierewicz v. Cannon*, 42 Wis.2d 368, 378–79, 166 N.W.2d 255 (1969), we said:

"In general, the district attorney is not answerable to any other officer of the state in respect to the manner in which he exercises those powers. True, he is answerable to the people, for if he fails in his trust he can be recalled or defeated at the polls. In the event he wilfully fails to perform his duties or is involved in crime, he may be suspended from office by the governor and removed for cause. These, however, are political remedies that go not to directing the performance of specific duties but rather go to the question of fitness for office."

It would be inappropriate for a trial court, by means of a pretrial dismissal with prejudice, to insulate a district attorney from accountability for the manner in which he fulfills his public trust. Although we have recognized that a district attorney's duty is to administer justice rather than to secure convictions, *Karpinski*, 92 Wis.2d at 607, the success with which that duty is accomplished depends in part upon the prosecutorial skills a district attorney demonstrates in the criminal courts of this state. If a criminal prosecution fails for lack of prosecutorial diligence, it is the district attorney's responsibility. The court should not intercede unless the defendant's right to a speedy trial is denied.

The defendant next argues that, unless trial courts are found to have the power to dismiss with prejudice, our holding in *Wittke* would be eviscerated. In that case we

held that, where a complaint is dismissed after a preliminary examination for want of probable cause, a prosecutor may reissue only upon additional evidence; otherwise, the state's remedy is appeal of the order of dismissal. We reasoned that repeated filings based upon the same evidence would lead to duplicative and harassing litigation. But the considerations which underlie *Wittke* are not present in this case. The concern we expressed in that case was "that controversies once decided on their merits remain in repose and that inconsistent judicial decisions not be made on the same set of facts," 80 Wis.2d at 342. The vexation and harassment contemplated in such a situation is that which results from repeated attempts to establish probable cause upon evidence which has already been found, and is likely to continue to be found, insufficient. Such is not the case here. Accordingly, we do not see our decision in *Wittke* as requiring or implying that a trial court may dismiss with prejudice.

(B)

Having concluded that none of our cases accord trial courts the power to dismiss a criminal case with prejudice prior to jeopardy, with the narrow exception involving the constitutional right to a speedy trial, we now consider the defendant's argument that such power is inherent, that is, deriving not from statute or judicial decision but from a court's power to control its own judicial business.

We had occasion to review our previous statements on the doctrine of inherent power in *Jacobson v. Avestruz,* 81 Wis.2d 240, 244–46, 260 N.W.2d 267 (1977), wherein it is stated:

"This court has previously discussed the scope of the inherent powers of the courts of this state, but not direct-

ly in relation to the imposition of jury impaneling costs. In *State v. Cannon,* 196 Wis. 534, 536–37, 221 N.W. 603 (1928) this court summarized the nature of the powers inherent to the courts as follows

" 'In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. In *In re Court Room,* 148 Wis. 109, 121, 134 N.W. 490, it was said:

" ' "The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it."

" 'In *In re Bruen,* 102 Wash. 472, 172 Pac. 1152, the supreme court of Washington said:

" ' "The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers." '

"Since *State v. Cannon,* this court has made reference to the inherent powers of the courts in various contexts. In *In re Cannon,* 206 Wis. 374, 393, 240 N.W. 441 (1932), this court discussed the concept of the judiciary's inherent powers and the immunity of these powers from legislative abrogation. In *Latham v. Casey & King Corp., supra* at 314–15, this court stated:

" 'It is considered well established that a court has the inherent power to resort to a dismissal of an action in the orderly administration of justice. *The general control of the judicial business before it is essential to the court if it is to function.* "Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort." 14 Am. Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Supp., p. 77.' (Emphasis supplied.)"

These cases teach that an inherent power is one without which a court cannot properly function. The court of appeals did not find the power to dismiss with prejudice in a criminal case to be vital to a court's existence, concluding "Courts have traditionally not had this power, and they have been able to function efficiently without it." *State v. Braunsdorf,* 92 Wis.2d at 851. Since no decision of this court has ever recognized the existence of such an inherent power, the defendant directs our attention to decisions from several other jurisdictions in which it has been recognized.

The principal case relied upon is *United States v. Furey,* 514 F.2d 1098 (2d Cir. 1975), in which the court of appeals upheld a trial court's dismissal with prejudice pursuant to a district court rule governing the prompt disposition of criminal cases. The court stated:

"The federal courts also possess the inherent power, derived from the common law, to dismiss a case for want of prosecution, whether or not there has been a Sixth Amendment violation, *e.g., Mann v. United States,* 113 U.S. App. D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S. Ct. 194, 9 L. Ed.2d 127 (1962) ; *District of Columbia v. Weams,* 208 A.2d 617 (D.C. Mun. App. 1965) ; *Ex parte Altman,* 34 F. Supp. 106 (S.D. Cal. 1940) ; cf. *United States v. Cartano,* 420 F.2d 362, 363 (1st Cir. 1969), cert. denied, 397 U.S. 1054, 90 S. Ct. 1398, 25 L. Ed.2d 671 (1970) ; *Mathies v. United States,* 126 U.S. App. D.C. 98, 374 F.2d 312, 314–15 (1967). Restated in

Rule 48(b), F.R. Cr. P., see Advisory Committee Notes to Rule 48, 8A Moore's Federal Practice ¶48.01, this power is independent of Sixth Amendment considerations, being an outgrowth of the court's supervisory authority with respect to its own jurisdiction. Its exercise has traditionally been within the court's discretion, *United States v. Aberson,* 419 F.2d 820 (2d Cir.), cert. denied, 397 U.S. 1066, 90 S. Ct. 1497, 25 L. Ed.2d 687 (1970)." *Id.* at 1103.

Citing *White v. United States,* 377 F.2d 948 (D.C. Cir. 1967), and *District of Columbia v. Weams,* 208 A.2d 617 (D.C. 1965), it further concluded that this power extended to dismissals with prejudice. 514 F.2d at 1103. Because it is imperative that the source of this inherent power be uncovered, we must closely examine *Furey* and the cases which purport to support it.

*White* upheld the dismissal of a second indictment for a vehicle code violation on the ground that the first indictment had been dismissed with prejudice. The District of Columbia circuit court of appeals relied upon *United States v. Oppenheimer,* 242 U.S. 85 (1916), for the proposition that an adjudication of the merits of the first indictment bars the second, and also upon *Weams. Weams* involved a fact situation similar to this case. There the prosecution had requested a continuance because of the absence of a government witness. After a recess during which counsel for the parties apparently attempted to reach a stipulation on the testimony of the absent witness, the prosecution informed the court that it had decided to enter a *nolle prosequi.* The trial court declined to accept the *nolle prosequi* and dismissed the case with prejudice. When the prosecution attempted to recommence the action, the second indictments were dismissed and the government appealed. The District of Columbia court of appeals held that the trial court's dismissal with prejudice was a proper application of the

court's power to curb the use of *nolle prosequi* "in a manner that is 'scandalous,' 'corrupt,' or 'capricious and vexatiously repetitious.'" 208 A.2d at 618. In support of that proposition, the court cites six cases,[4] none of which do we find supportive of the existence of a trial court's power to dismiss a case with prejudice. Instead, five of them state only what we stated in *Kenyon,* which is that under certain circumstances a trial court may deny a prosecutor's motion to dismiss a criminal case. The sixth case, *Ex Parte Altman,* 34 F. Supp. 106 (S.D. Cal. 1940), involved a petition for writ of habeas corpus by Altman who had been indicted in Michigan. The Michigan trial court dismissed the indictment for want of prosecution, and then three months later reinstated it upon the motion of the government. Altman, challenging the reinstated indictment in the California court, argued that the indictment, once dismissed, was a bar to further action. The court, without citation to any authority stated: "But it is not questioned that the Court, in the exercise of its jurisdiction, has the inherent power to order a dismissal for failure to prosecute." *Id.* at 108. The opinion further states: "But the order of dismissal was neither a judgment nor was it final. A dismissal or *nolle prosequi* does not work an acquittal. Or bar a second prosecution for the same offense." (Citations omitted.) *Id.* at 108–09.

Thus by its express language even *Altman* does not purport to go as far as *Weams,* since it expressly indicates that such dismissals are without prejudice. Because we do not believe the cases relied upon in *Weams*

---

[4] *People ex rel. Elliott v. Covelli,* 415 Ill. 79, 112 N.E.2d 156 (1953); *State v. Charles,* 183 S.C. 188, 190 S.E. 466 (1937); *Commonwealth v. Dascalakis,* 246 Mass. 12, 140 N.E. 470 (1923); *State on Inf. of McKittrick v. Graves,* 346 Mo. 990, 144 S.W.2d 91 (1940); *United States v. Krakowitz,* 52 F. Supp. 774 (S.D. Ohio 1943); *Ex Parte Altman,* 34 F. Supp. 106 (S.D. Cal. 1940).

really support its holding, we have serious reservations about its authoritative value for the proposition that a trial court possesses an inherent power to dismiss with prejudice. And because *Furey,* upon which the defendant herein relies, is built squarely upon *Weams* and *Altman,* its precedential underpinnings are likewise suspect. Moreover, our reservations are corroborated by commentators who have concluded that before *Furey* and *Weams* dismissal with prejudice on nonconstitutional grounds was unknown. *See:* Frase, *The Speedy Trial Act of 1974,* 43 U. Chi. L. Rev. 667, 704 n. 177 (1976); Note, 41 N.Y.U. L. Rev. 996, 998 (1966).

The defendant also cites two Florida cases, *State v. Romano,* 300 So.2d 22 (Fla. App. 1974), and *State v. Fattorusso,* 228 So.2d 630 (Fla. App. 1969). In *Fattorusso* the court of appeals reversed a trial court's dismissal of an information with prejudice, but in the course of its opinion recognized, without citing authority, "the inherent right of the trial court to dismiss an action because of non-compliance with its orders in the interests of the orderly administration of justice." *Id.* at 633. The court further stated that a dismissal should be with prejudice only where there has been "a deliberate and contumacious disregard of the court's authority." *Id.* Because these statements come without supporting authority, we find *Fattorusso* and *Romano,* which cites *Fattorusso,* of no help in our search to uncover the source of this inherent authority.

Finally, we turn our attention to those cases which discuss the court's authority to dismiss with prejudice on nonconstitutional grounds pursuant to Fed. R. Crim. P. 48.[5] In *United States v. Simmons,* 536 F.2d 827 (9th

[5] Fed. R. Crim. P. 48 states:

"(a) BY ATTORNEY FOR GOVERNMENT. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution

Cir. 1976), the trial court dismissed a forgery indictment on alternative grounds that the defendant had been denied his constitutional right to a speedy trial and that the court was authorized to dismiss pursuant to Rule 48(b), Fed. R. Crim. P. Although the court of appeals found the dismissals unwarranted, it expressly recognized that Rule 48(b) authorizes a court to dismiss a criminal case with prejudice independent of a constitutional violation. *See also: United States v. Stoker,* 522 F.2d 576 (10th Cir. 1975) ; *United States v. Towill,* 548 F.2d 1363 (9th Cir. 1977) ; *United States v. Clay,* 481 F. 2d 133 (7th Cir. 1973). The Federal Advisory Committee Notes to Rule 48(b) state that "[t]his rule is a restatement of the inherent power of the court to dismiss a case for want of prosecution." Yet the only case cited in the notes in support of that statement is one we have considered and distinguished: *Ex parte Altman, supra.*

The defendant's authorities do not enable us to trace the source of this inherent power back beyond *Weams* and *Furey.* If those cases express some inherent power of a court which has long resided with the tribunals of this land, we are unaware of any preceding authority where the power of dismissal with prejudice has been invoked in a nonconstitutional setting. We are satisfied that this power was not inherited from English common law, since it was not until *Director of Public Prosecutions v. Humphrys,* [1976] 2 All E.R. 497, that the English courts recognized the power of a trial court to dismiss a case with prejudice, and even then, the majority,

shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

"(b) BY COURT. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

over a vigorous dissent, could cite no criminal cases for authority.

Because we find that (1) the existence of this inherent power has only recently been articulated in American jurisprudence, and (2) it arises frequently in connection with a procedural rule or statute authorizing dismissals, we conclude that the power to dismiss a criminal case with prejudice prior to jeopardy on nonconstitutional grounds is not essential to the existence or the orderly functioning of a trial court, and it is not, therefore, an inherent power of the trial courts of this state.

## (C)

This conclusion notwithstanding, the defendant urges us to recognize such a power in the trial court for reasons of policy and economy of judicial resources. We acknowledge that we have sanctioned dismissals for want of prosecution in civil cases, *Furrenes v. Ford Motor Co.,* 79 Wis.2d 260, 255 N.W.2d 511 (1977) ; *Cukrowski v. Mt. Sinai Hospital,* 67 Wis.2d 487, 227 N.W.2d 95 (1975) ; *Zeis v. Fruehauf Corp.,* 56 Wis.2d 486, 202 N.W.2d 225 (1972) ; *Lawrence v. MacIntyre,* 48 Wis.2d 550, 180 N.W.2d 538 (1970), and recognize that the existence of a statute authorizing such a dismissal of civil cases does not negate the court's inherent authority. *Jacobson v. Avestruz,* 81 Wis.2d at 246; *Trispel v. Haefer,* 89 Wis. 2d 725, 733, 279 N.W.2d 242 (1979). But while dismissal in a civil case affects only the litigating parties, a dismissal in a criminal case has broader implications for society as a whole. Here the defendant's constitutional rights are not implicated, so the competing interests involved are the need of the court to have a remedy for the sort of conduct shown here by the assistant district attorney, as well as to exercise control over its calendar, and that of society to be secure from crime through the

regular enforcement of the criminal laws. The balance weighs heavily in favor of society's interests, and for this reason we do not recognize such a power of dismissal with prejudice in criminal cases to be necessary by reason of public policy or economy of judicial resources.

The defendant argues that both these interests can be accommodated by the use of a "public interest" standard such as we expressed in *Kenyon*. While we have little doubt that our trial courts could ably apply such a standard, we believe that the power to dismiss a criminal case with prejudice before the attachment of jeopardy, regardless of how judiciously it is used by trial courts, is too great an intrusion into the realm of prosecutorial discretion. *See: United States v. Cowan,* 524 F. 2d 504 (5th Cir. 1975) ; *Newman v. United States,* 382 F.2d 479 (D.C. Cir. 1967). Comment, *The Nolle Prosequi Under Rule 48(a) of the Federal Rules of Criminal Procedure,* 1978 Det. C.L. Rev. 491, 498–504 (1978) ; Note, *Reviewability of Prosecutorial Discretion: Failure to Prosecute,* 75 Colum. L. Rev. 130, 136–38 (1975). Accordingly, we hold that the trial courts of this state do not possess the power to dismiss a criminal case with prejudice prior to the attachment of jeopardy except in the case of a violation of a constitutional right to a speedy trial.

## II.

Our holding, however, does not mean we approve of the district attorney's conduct in this case. His lack of preparation and unauthorized discharge of the jury panel were an affront to the dignity of the court and the respect which he is sworn to observe. Sec. 757.29 (1), Stats. In such situations the court is not without power to act.

Standard 7 of the *Code of Judicial Ethics*, 36 Wis.2d 252, 257, 153 N.W.2d 873 (1967), provides as follows:

"A judge should utilize his opportunities to criticize and correct unprofessional conduct of attorneys and counsellors, brought to his attention; and, if adverse comment is not a sufficient corrective, should send the matter at once to the proper investigating disciplinary authorities."

In addition, we have approved the use of contempt power to protect the dignity and authority of the court. *In re Hon. Charles E. Kading,* 74 Wis.2d 405, 411, 246 N.W.2d 903 (1976); *Appeal of Cichon,* 227 Wis. 62, 68, 278 N.W. 1 (1938); *Bihlmire v. Hahn,* 31 Wis.2d 537, 543, 143 N.W.2d 433 (1966). While this power should be used sparingly and with great deliberation, *In re Adam's Rib, Inc. (Kaminsky),* 39 Wis.2d 741, 746, 159 N.W.2d 643 (1968), it may nonetheless be invoked against an offending attorney. *Rubin v. State,* 192 Wis. 1, 211 N.W. 926 (1927); *McKinnon v. State,* 526 P.2d 18 (Alaska 1974).

*By the Court.*—The decision of the court of appeals is affirmed.

DAY, J. (*dissenting*). I dissent. When the public prosecutor moves to dismiss a criminal case before jeopardy attaches, a trial court, if it grants the motion, has the inherent power to do so with prejudice. The question is not power, but whether there is an abuse of discretion in such dismissal. It is a matter of balancing the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system. When the motion to dismiss becomes abusive of judicial process, as it was here, the court properly exercised its inherent power in granting the district attorney's motion to dismiss but doing so with prejudice.

Sharon Braunsdorf was charged with welfare fraud pursuant to secs. 49.12(6) and 943.20(1)(c), Stats. 1977. She agreed to repay the amounts overpaid to her at the rate of $100 per month, and had repaid $800 before this prosecution was initiated.

She had retained private counsel and was prepared for trial on the scheduled date. By then, however, the assistant district attorney had directed the clerk of courts to discharge the jury panel because he was unprepared to go to trial. This was done without the knowledge of the trial court and without authority.

At the time of trial, the assistant district attorney sought a continuance, which the trial court denied. The prosecutor then moved to dismiss with a view to reinstating prosecution later. The court granted that motion, but made its dismissal with prejudice.

A renewed prosecution, following dismissal without prejudice, would have subjected Braunsdorf to a second arrest, a second bail hearing, a second preliminary hearing, a second plea and finally a trial on these charges. All of this because of the inexcusable unpreparedness of the prosecutor.

Under these circumstances, the trial court's decision to grant the district attorney's motion to dismiss but with prejudice was fully justified.

Under Article VII, section 2 of the Wisconsin Constitution, the judicial power of the state is vested in a unified system of courts. This constitutional authority carries with it the inherent power to regulate proceedings to facilitate the administration of justice. 20 Am. Jur. 2d, *Courts*, sec. 78. *See also,* Currie, *The Separation of Powers: Control Of Courts And Lawyers*, 47 Wis. Bar. Bull. 7, 14 (December, 1974).

In *Latham v. Casey & King Corp.*, 23 Wis.2d 311, 314, 127 N.W.2d 225 (1964), this court held:

"... a court has the inherent power to resort to a dismissal of an action in the orderly administration of justice. *The general control of the orderly judicial business before it is essential to the court if it is to function.* 'Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort.' " (Emphasis added.)

The majority refers to the broad discretion possessed by a prosecutor in instituting prosecutions under the criminal code but then wrongly concludes that when the district attorney moves to dismiss such a prosecution with a view to reprosecution, a trial court has no authority to dismiss such action with prejudice for cause, either *sua sponte* or on motion of the defendant, unless jeopardy has attached or some constitutional right of the defendant is involved.

Society has a strong interest in punishing criminal conduct. But society also has an interest in protecting the integrity of the judicial process and in ensuring fairness to defendants in judicial proceedings. Where those fundamental interests are threatened, the "discretion" of the prosecutor must be subject to the power and responsibility of the court.

The majority on page 586 states that:

"... We believe that the power to dismiss a criminal case with prejudice before the attachment of jeopardy, regardless of how judiciously it is used by trial courts, is too great an intrusion into the realm of prosecutorial discretion."

But this statement sweeps too broadly. We are not concerned here with whether a trial court can *sua sponte* or on motion of a defendant dismiss a criminal case with prejudice regardless of any action on the part of the district attorney. Here the issue is much narrower and

involves the court's authority to act where it is the district attorney who moves to dismiss with the right to start over.

The majority sees a "broad" discretion on the part of the district attorney as to when to commence a prosecution. But this court has not equated the power to start with the power to stop. On the contrary, this court has held that before the district attorney can stop *(nolle prosequi)* a prosecution once started, approval must be obtained from the trial court, who is to make such determination "in the public interest." *State v. Kenyon,* 85 Wis.2d 36, 45, 270 N.W.2d 160 (1978). The discretion of the district attorney in this area is not absolute.

This was not a prosecution for first-degree murder where the societal interest in prosecution could be found by a trial court to outweigh the issues of fairness to the defendant and the court's orderly functioning. There was no abuse of discretion by the trial court.

The idea that the trial court has this power is hardly a novel proposition. While it is a question of first impression in this court, the power is widely recognized in federal courts. In *United States v. Furey,* 514 F.2d 1098 (2d Cir. 1975), the court held the power of a federal court to dismiss with prejudice a part of the inherent powers derived from the common law. The court further stated that:

". . . this power is independent of Sixth Amendment considerations, being an outgrowth of the court's supervisory authority with respect to its own jurisdiction. Its exercise has traditionally been within the court's discretion, United States v. Aberson, 419 F.2d 820 (2d Cir.), cert. denied, 397 U.S. 1066, 90 S. Ct. 1497, 25 L. Ed.2d 687 (1970). It has been used, for instance, . . . to protect the public interest 'in the prosecution of those accused of crime without the procrastination of which the processes of law are sometimes guilty,' United States

v. Mark II Electronics of Louisiana, Inc., 283 F. Supp. 280, 283 (E.D. La. 1968), . . . *Dismissal under this power may be without prejudice, . . . or with prejudice,* White v. United States, 126 U.S. App. D.C. 309, 377, F.2d 948 (1967); District of Columbia v. Weams, supra; 3 Wright, Federal Practice and Procedure §814, at 319 (1969).

"Cases cited by the government for the proposition that dismissal with prejudice is proper only when the Sixth Amendment is invoked are not only distinguishable but do not support such a rule." 514 F.2d at 1103. (Emphasis added.)

In England, the House of Lords has also recognized this power. In *Director Of Public Prosecutions v. Humphrys,* [1976] 2 All E.R. 497, 527–528, Lord Salmon wrote:

". . . a judge has not and should not appear to have any responsibility for the institution of prosecutions; nor has he any power to refuse to allow a prosecution to proceed merely because he considers that, as a matter of policy, it ought not to have been brought. It is only if the prosecution amounts to an abuse of the process of the court and is oppressive and vexatious that the judge has the power to intervene."

Lord Edmund-Davies expressed a concurring view:

"I am now satisfied that, in the words of Lord Parker, C.J. in *Mills v. Cooper,* 'every court has undoubtedly a right in its discretion to decline to hear proceedings on the ground that they are oppressive and an abuse of the process of the court.' " *Humphrys* at 533.

I find these cases persuasive, and believe the crucial question is not the existence of the power, but the propriety of its exercise on the facts of a particular case.

The majority recognizes the power of the trial court to deny the motion to dismiss without prejudice, and thus force the unprepared prosecutor to trial. But such a decision on the part of a trial judge is merely the ex-

ercise of discretion and would constitute abuse if not justified under the circumstances. Plainly a prosecutor with no evidence or witnesses will fail to meet his burden of proof, and a dismissal on the merits will follow. The majority defends this hollow exercise because the resulting dismissal will properly place the blame on the shoulders of the prosecutor, who is accountable to the electorate. But will it? Forcing the state to go to "trial" under such circumstances serves to bring discredit on the system of justice.

I would reverse the court of appeals and affirm the order of the trial court.

I am authorized to state that Justice Heffernan and Justice Abrahamson join in this dissent.