889 P.2d 1092

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Romeo Fagauai MAGEO,
Defendant–Appellee.**

**No. 16655.**

Intermediate Court of Appeals of Hawai'i.

Feb. 17, 1995.

James H.S. Choi, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellant.

Christopher R. Evans, on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

The State of Hawai'i (State) appeals from a district court order entered on October 30, 1992, dismissing two charges against Defendant–Appellant Romeo Fagauai Mageo (Defendant) for driving without no-fault insurance, in violation of Hawai'i Revised Statutes (HRS) § 431:10C–104 (Special Pamphlet 1987 and Supp.1992). The district court apparently held that Defendant had not been served with penal summonses in a timely manner, referring to Hawai'i Rules of Penal Procedure (HRPP) Rule 9, or, in the alternative, that HRPP Rule 48 applied to Defendant, who had not been brought to trial within six months, as required under that rule.

■■■ We agree with the State that HRPP Rule 48 did not apply to Defendant because the offenses involved here are "traffic offenses" expressly excepted from the operation of HRPP Rule 48. However, we believe that the district court had inherent power to dismiss the traffic offenses for want of prosecution. The State having offered no explanation for the over two-year delay in serving Defendant with the penal summonses, we find the district court did not abuse its discretion in the exercise of its inherent power, and therefore, affirm the order granting the motion to dismiss.

We glean the following matters from the sparse record before us. Defendant was cited for driving without no-fault insurance on July 12, 1989, October 9, 1989, and March 8, 1991. Neither the citations nor their contents is in the record. Evidently, Defendant did not report to court in response to the citations because penal summonses were issued for him on August 1, 1989, November 1, 1989, and April 5, 1991, for the respective citations. There is no record of the penal summonses being served, or pursuant to HRPP Rule 9(c), of the summonses being returned unserved, cancelled, and reissued for service.[1]

However, all of the penal summonses were "reinstated"[2] on February 5, 1992. Prior to reinstatement of the penal summonses, there was no case activity of record for two and one-half years on the first citation, and for two and one-fourth years on the second citation.

On February 21, 1992, Defendant entered a plea of not guilty to all three citations. On October 5, 1992, Defendant filed a written motion to dismiss the first two citations only.[3] The motion primarily maintained that (1) the State had failed to commence trial within six months of the penal summonses' issuance, in violation of HRPP Rule 48, and that (2) Defendant's right to a speedy trial under the United States and Hawai'i constitutions had been denied.

The hearing on the motion to dismiss took place on October 30, 1992. At the hearing, the court took no evidence but questioned Defendant from the bench. Defendant's unsworn response to the court indicated he had been in Hawai'i since 1989 and had not left the State.[4] Neither party objected then, or

1. Hawai'i Rules of Penal Procedure (HRPP) Rule 9(c) provides in pertinent part that:

(4) RETURN.... On or before the date set for the defendant's appearance the officer to whom a summons was delivered for service shall make return thereof. At the request of the prosecutor any ... unserved summons shall be returned and cancelled. A ... summons returned unserved may be cancelled by the court, or may, at the request of the prosecutor made at any time while the charge is pending, be re-issued for ... service.

HRPP Rule 9(c)(4) (amended April 18, 1994, effective April 28, 1994) (the rule remains substantially the same).

2. The procedure for reinstatement of penal summonses is not set forth in the record, or in the HRPP.

3. The third citation was not included in the motion, and therefore, is not a subject of this appeal.

4. The exchange was as follows:

on appeal, to this procedure.[5]

The district court then granted the motion on essentially two grounds:[6] (1) the penal summonses had not been timely served, in violation of HRPP Rule 9(c)(3)(ii), which states that summonses must be served "without unnecessary delay," and alternatively, (2) the "traffic offenses" exception to the HRPP Rule 48 requirement that Defendant's trial be commenced within six months of being charged was inapplicable, because he was potentially subject to punishment for a petty misdemeanor as opposed to a "violation."[7]

The court did not render a decision on Defendant's speedy trial claim.

## I.

We examine the district court's reliance on HRPP Rule 48 first.

In response to the State's contention that HRPP Rule 48 specifically excludes traffic offenses from its scope, the court indicated that the "possibility of the jail sentence . . . makes it . . . a petty misdemeanor . . . and . . . not a traffic offense." But it has already been established that the severity of the penalty is not determinative of whether an act is to be considered a traffic offense under

HRPP Rule 48. *State v. Leatiota*, 69 Haw. 253, 254, 739 P.2d 930, 930 (1987). For, "[t]he rule in question exempts . . . all traffic offenses . . . even though [the offense may be] a serious crime." *Id.* (Driving under the influence (DUI), HRS § 291–4(a)(1) (1985), is both a serious crime and a traffic offense.)

The question remains as to whether a violation of HRS § 431:10C–104 constitutes a "traffic offense." An "offense" generally refers to a felony or misdemeanor or a "violation of law for which a penalty is prescribed." *Black's Law Dictionary* 1081 (6th ed. 1990). Under the Hawai'i Penal Code (HPC), "offenses are classified into 'crimes' and 'violations' with 'crimes' further subdivided into felonies, misdemeanors and petty misdemeanors." Commentary to HRPP Rule 1, submitted 1975 at 2. As a result, any penalty applicable to Defendant would result in charging an "offense." For the first violation of HRS § 431:10C–104, Defendant would be subject to a fine of $1,000, HRS § 431:10C–117, (Supp.1990) (amended 1990 and 1993), making the offense a "violation" under the HPC. HRS § 701–107(5) (1985). For multiple violations of the statute, Defendant would be subject to up to 30 days' imprisonment, HRS § 431:10C–117(3)(A), making the of-

---

THE COURT: Allright [sic], the only thing I would like to know is was Mr. Mageo present in this State or outside of the State during the time period in question.

MR. EVANS: I'll have my client answer that question directly.

THE COURT: Mr. Mageo, since 1989 have you been living in Hawaii [Hawai'i] or did you move someplace else or what?

THE DEFENDANT: No, I was here.

THE COURT: You stayed here in Hawaii [Hawai'i].

5. We do not indicate any approval of the procedure followed by the court.

6. The court stated:

So my ruling specifically is based upon an interpretation of [HRPP] Rule 9, failure to serve process in a reasonable amount of time based on the principles enunciated in [HRPP] Rule 48. And in the alternative, that [HRPP] Rule 48 specifically applies because of the jail sentence making this a petty misdemeanor, so either/or.

Earlier, the court had said:

Allright [sic], I've reviewed the memorandum as well as previous memorandums of law

that I have been provided on this issue and it appears to me that number one, this is a violation of Rule 9, Hawaii [Hawai'i] Rules of Penal Procedure requiring process to be served immediately.

I believe given the possibility of jail sentence that it is a petty misdemeanor and that would make it a specific violation of the rule, whatever the heck it is. And, um,—

MR. MEDEIROS: [HRPP] Rule 48. That'd be [HRPP] Rule 48.

THE COURT: —48, and, ah, but even if it is not[,] I believe the principles enunciated in [HRPP] Rule 48 would apply under . . . [HRPP] Rule 9 so for all of those reasons I will dismiss—

We assume the court's last pronouncement was its final rationale.

7. Generally, a petty misdemeanor under the Hawai'i Penal Code (HPC) is punishable by a term of imprisonment "of which the maximum is less than one year." Hawai'i Revised Statutes (HRS) § 701–107(4) (1985).

A violation under the HPC is punishable by "no other sentence than a fine, or fine and forfeiture or other civil penalty[.]" HRS § 701–107(5) (1985).

fense a petty misdemeanor under the HPC. HRS § 701–107(4) (1985). HRS § 431:10C–117(2) itself, also confirms that "each violation [of HRS § 431:10C–104] shall be deemed [an] .... *offense*." (Emphasis added.)

■ "Traffic" pertains to the "passing to and fro of ... vehicles ... along a route of transportation, as along a street[.]" *Black's Law Dictionary* 1495 (6th ed. 1990). In that connection, it has been held that the violation of a statute which governs the operation of a motor vehicle constitutes a "traffic offense" under HRPP Rule 48. *Leatiota*, 69 Haw. at 254, 739 P.2d at 930. Thus, we may reasonably infer that, generally, any regulation of, condition on, or restriction on the use or operation of a vehicle on a public way, the violation of which results in a statutorily imposed penalty, would constitute a "traffic offense" under HRPP Rule 48. *Cf. Leatiota*, 69 Haw. at 253, 739 P.2d at 930 (DUI is a traffic offense); *State v. Busby*, 71 Haw. 408, 793 P.2d 1187 (1990) (license revocation for failure to submit to breath or blood test is a traffic offense).

HRS § 431:10C–104 clearly falls within the ambit of such a framework. It provides, subject to the penalties set forth in HRS § 431:10C–117, that "no person shall operate or use a motor vehicle upon any public street, road or highway ... unless such motor vehicle is insured ... under a no-fault policy." Therefore, under the statute, coverage under a no-fault insurance policy is, as the title of the section states, a "[c]ondition[ ] of operation ... of motor vehicles." HRS § 431:10C–104 (emphasis omitted). Because no-fault insurance coverage is a condition to the operation of a motor vehicle upon a public way enforceable by a statutory penalty, we hold that driving without no-fault insurance is a "traffic offense."

HRPP Rule 48 expressly exempts all "traffic offenses" from its operation: "Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months...." HRPP Rule 48(b).

Since HRPP Rule 48 excludes all traffic offenses from its scope, and driving without no-fault insurance constitutes a traffic of-

fense, HRPP Rule 48 did not apply to Defendant's cases. Hence, the offenses here were not subject to dismissal pursuant to HRPP Rule 48.

■ But, HRPP Rule 48 "has been regarded as a restatement of the inherent power of the court to dismiss a case for want of prosecution[.]" *State v. English*, 61 Haw. 12, 23, 594 P.2d 1069, 1076 (1979). "The purpose of [HRPP] Rule 48 is to ensure an accused a speedy trial ... separate and distinct from his [or her] constitutional protection to a speedy trial." *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981) (footnote omitted). Its "purpose is also ... to relieve congestion in the trial court, to promptly process all cases ..., and to advance the efficiency of the criminal justice process." *Id.* We may deduce that similar considerations underlie a court's inherent power to dismiss for want of prosecution, since HRPP Rule 48 is "a restatement of [that] inherent power[.]" *English*, 61 Haw. at 23, 594 P.2d at 1076. HRPP Rule 48 was originally based upon Federal Rules of Criminal Procedure (Fed.R.Crim.P.) Rule 48, acknowledged as the codification of a court's inherent power to dismiss for want of prosecution. *See* Fed. R.Crim.P. Rule 48 advisory committee's note *reprinted in* 3A C. Wright, *Federal Practice and Procedure: Criminal* app. at 567 (2d ed. 1982).

By excluding "traffic offenses" from its operation, HRPP Rule 48 imposed no requirements as to when traffic offenses must be tried. But that would hardly countenance an unlimited time period within which to commence the trial of traffic offenses. Rather, the exclusion of traffic cases from the timetable set out in HRPP Rule 48 leaves undisturbed the pre-existing inherent power of the court to dismiss for want of prosecution as to traffic cases. We review, then, the application of that power.

II.

We believe the district court's broad ruling encompassed an exercise of the court's inherent power to dismiss for want of prosecution. It said, "So my ruling specifically is based upon an interpretation of [HRPP] Rule 9,

failure to serve the process in a reasonable amount of time *based on the principles enunciated in [HRPP] Rule 48.*" (Emphasis added.)

Obviously, the court was concerned with the effect the delay in service of the penal summonses had on bringing the case to trial. HRPP Rule 9 directs that a summons be served "without unreasonable delay."[8] The principles of HRPP Rule 48 expounded above are, as well, concerned with avoiding unjustified delay.

### A.

■ It is well-recognized that a court has inherent power to dismiss a case for want of prosecution in civil cases. *Link v. Wabash R.R.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Compass Dev. Co. v. Blevins*, 10 Haw.App. 388, 395, 876 P.2d 1335, 1338 (1994). In criminal cases, "the power of a court to dismiss a case on its own motion for failure to prosecute with due diligence is *inherent[.]*" *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981) (citing *United States v. Clay*, 481 F.2d 133 (7th Cir), *cert. denied*, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973)) (emphasis added). Indeed, as pointed out *supra*, HRPP Rule 48 was merely "a restatement of the [already existing] inherent power of the court to dismiss a case for want of prosecution." Fed.R.Crim.P. Rule 48(b) advisory committee's note *reprinted in* 3A C. Wright, *supra*, at 567.

■ A trial court's exercise of its inherent power to dismiss a criminal case with prejudice was upheld in *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705 (1982). There, the court, relying on article VI, section 1 of the Hawai'i Constitution pertaining to the "judicial power of the State[,]" and also citing HRS § 603–21.9 (1976) which grants courts the power to take steps "necessary" for the promotion of justice, found that the inherent power included the "power to administer justice." *Id.* at 55, 647 P.2d at 711–12. The court held that under this aspect of the judicial power, "trial courts have the power to dismiss *sua sponte* an indictment with prejudice and over the objection of the prosecuting attorney[ ] [w]ithin the bounds of duly exercised discretion[.]" *Id.* The "parameters within which this discretion is properly exercised" requires a " 'balancing [of] the interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system.' " *Id.* at 56, 647 P.2d at 712 (quoting *State v. Braunsdorf*, 98 Wis.2d 569, 587, 297 N.W.2d 808, 817 (1980) (Day, J., dissenting)). The test set forth above was adopted from the dissenting opinion in *Braunsdorf*. While *Moriwake* concerned dismissal of an indictment for manslaughter following two hung jury mistrials, *Braunsdorf*, similar to the instant case, involved a dismissal with prejudice because of a prosecutor's attempt to continue a trial when he was not ready to proceed.[9] Thus, as a general matter, the test

---

8. As the district court interpreted HRPP Rule 9 "based on [HRPP] Rule 48 *principles[,]*" we are not required to determine whether HRPP Rule 9 authorizes dismissal of a charge if the summons is not served "without unnecessary delay." (Emphasis added.)

Nor is it clear that under the instant facts HRPP Rule 9 would apply to a penal summons issued after service of the initial summons. HRPP Rule 9(a)(5) states that, "If a defendant fails to appear in response to a summons, a warrant may issue." This wording is similar to the federal counterparts to HRPP Rule 9. Those counterparts, Federal Rules of Criminal Procedure (Fed.R.Crim.P.) Rules 4 and 9, provide that, "If a defendant fails to appear in response to the summons, a warrant shall issue." Fed.R.Crim.P. Rules 4(a) and 9(a). According to the Advisory Committee Notes to Fed.R.Crim.P. Rule 4, the "failure to respond to a summons is not a contempt of court, but is ground for issuing a war-

rant." Fed.R.Crim.P. Rule 4 advisory committee's note *reprinted in* 3A C. Wright, *Federal Practice and Procedure: Criminal* app. at 428 (2d ed. 1982).

Therefore, Fed.R.Crim.P. Rules 4 and 9 appear to refer to the initial summons and not a penal summons issued for failure to respond to the initial summons. Analogously, then, it would appear that HRPP Rule 9 may refer to an initial summons and not a subsequent penal summons.

In that regard, we also do not decide what effect, if any, the 1994 amendment of HRPP Rule 9(c)(3)(ii) changing "[t]he summons" to "[a] summons," adopted on April 18, 1994, would have in such a situation.

9. The Hawai'i Supreme Court's recognition of the trial court's inherent power to dismiss an indictment with prejudice and its adoption of a standard from the dissenting opinion of *State v. Braunsdorf*, 98 Wis.2d 569, 297 N.W. 808 (1980),

adopted in *Moriwake* with respect to a trial court's inherent power to dismiss a criminal case with prejudice is relevant and applicable to the exercise of inherent power in this case.[10] In the future, trial courts exercising this power should issue written factual findings setting forth their reasons for dismissal with prejudice so that a reviewing court may accurately assess whether the trial court duly exercised its discretion. *Id.* at 57 n. 16, 647 P.2d at 713 n. 16.

### B.

Nothing suggests that the district court intended, or the parties viewed its order granting Defendant's motion to dismiss to be without prejudice. A fair reading of the record inescapably leads to the conclusion that the court intended to finally terminate the case because of the unreasonable delay in serving the penal summonses. *Cf. White v. United States,* 377 F.2d 948 (1967) (per curiam) (reviewing court concluded, after reviewing record, that dismissal was with prejudice). Moreover, while rendered in a HRPP Rule 48 context, the Hawai'i Supreme Court has held "that a dismissal on the ground of unreasonable delay, unless it specifically recites that it is without prejudice, or specifically finds that there has been no prejudice to the accused's defense by the delay, is with prejudice." *State v. Valletta,* 66 Haw. 351, 353, 662 P.2d 204, 205 (1983) (per curiam).[11] Finally, under the facts, we fail to see any viable basis for holding that the State, after the long unexplained delay, may be rewarded with an opportunity to reinstate its case, thus engendering further delay and the usurpation of the orderly and prompt disposition of criminal cases. As was aptly stated:

> We can conceive the anarchy which would result if the power to terminate a criminal proceeding for want of prosecution did not exist. Defendants might have prosecutions hang over their heads, like the sword of Damocles, for years, without an effort being made to bring them to trial. And yet, if the prosecutor should refuse to try them, and the court acquiesce, they would be at his [or her] mercy.

*Ex parte Altman,* 34 F.Supp. 106, 108 (S.D.Cal.1940).

Applying the *Moriwake* standard, we acknowledge the State's interest in punishing criminal conduct. That is clearly outweighed, however, by the State's failure to timely prosecute and by its impact on the orderly functioning of the court system. There was a delay of over two years from the issuance of the penal summonses to the prosecution of the case. No explanation for the delay appears in the record. The State offered no written memoranda or oral offer of proof at the hearing to explain the delay, and the record is devoid of any reason for delay in service of the summonses. "Unreasonable delay in the determination of [a] criminal action subverts the public good and disgraces the administration of justice[.]" *Estencion,* 63 Haw. at 268, 625 P.2d at 1043. The record indicates Defendant was available for service in the jurisdiction over the period of non-prosecution and there is no evidence De-

---

implicitly rejected the majority's holding in that case. *Braunsdorf* involved the prosecution's motion to dismiss a charge of welfare fraud without prejudice since it was not ready to proceed to trial. The trial court granted the motion, but dismissed it with prejudice. *Id.* at 572, 297 N.W. at 810. The majority, held that, "trial courts of this state do not possess the power to dismiss a criminal case with prejudice prior to the attachment of jeopardy except in the case of a violation of a constitutional right to a speedy trial." *Id.* at 586, 297 N.W. at 816.

**10.** Obviously, the power would embrace the discretion to dismiss without prejudice, if appropriate under the circumstances.

**11.** The defendant in *State v. Valletta,* 66 Haw. 351, 662 P.2d 204 (1983) (per curiam), was reindicted on the same offenses that were initially dismissed because of unreasonable delay in prosecution. The initial order dismissing the case did not state whether the dismissal was with or without prejudice. The defendant again filed a motion to dismiss but this time the trial court denied the motion, stating that the prior order granting dismissal "was without prejudice." *Id.* at 352, 662 P.2d at 205. The supreme court reversed, holding the dismissal should be treated as being with prejudice.

fendant intentionally avoided service. Under such circumstances, the district court's exercise of its discretion was not arbitrary or without reason and was within the parameters set forth in *Moriwake.*[12]

### III.

For the foregoing reasons, the order of the district court entered on October 30, 1992, dismissing the charges herein, is affirmed.[13]

---

**12.** Even if, arguably, the district court "gave the wrong reason for its action[,]" we affirm its decision because it was the correct decision. *State v. Taniguchi,* 72 Haw. 235, 240, 815 P.2d 24, 26 (1991).

**13.** In light of our decision, and there being no cross-appeal taken by Defendant, we do not reach Defendant's contention that HRS § 805–13 (1985) "compels the [d]istrict [c]ourt to dispose of insurance violation cases expeditiously."