155 P.3d 655

**STATE of Hawai'i, Plaintiff-Appellee,**

v.

**Charlie OWENS, Jr., Defendant-Appellant.**

**No. 27714.**

Intermediate Court of Appeals of Hawai'i.

Feb. 5, 2007.

Nathan Kanale Sadowski, on the briefs, for Defendant-Appellant.

Sonja P. McCullen, on the briefs, for Plaintiff-Appellee.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

Defendant-Appellant Charlie Owens (Owens) appeals from the Revocation of Probation; Order of Resentencing entered in the Family Court of the First Circuit on December 20, 2005.[1] We affirm.

On February 20, 2001, Owens was charged by complaint with Abuse of Family and Household Members, Hawaii Revised Statutes (HRS) § 709–906. On February 20, 2001, Owens pled guilty and was sentenced to one year of probation, to two days of imprisonment, to pay a $50 Criminal Injuries Compensation Commission fee, to pay a $75 Probation Fee, to undergo Domestic Violence Intervention, and to appear on February 5, 2002 at District Court, Courtroom 8D, for a proof of compliance hearing. The "Terms and Conditions of Probation" state in part:

2. .... You shall appear in person at the Adult Services Branch ("ASB"), Bldg. 1, 5th Floor, Restaurant Row, by 3:00 P.M. [√] *2/21/01* ... for your intake interview with a probation officer, ...

---

1. Judge Russel S. Nagata presided.

3. You shall not leave the island of Oahu without prior permission from your probation officer or the Court.

4. You shall report any change of address, telephone number, or employment to your probation officer before any such change.

Owens failed to report to the ASB on February 21, 2001, as ordered. The ASB mailed a Noncompliance Report to Owens wherein he was "hereby requested to be present at 10:30 A.M. on TUESDAY, the 13th day of MARCH 2001" at the ASB. On March 5, 2001, the mailed sealed envelope was returned. It was stamped "RETURN TO SENDER". The phrase "no longer at this address" had been written on the envelope.

On March 27, 2001, Plaintiff–Appellee State of Hawai'i (the State) filed a "Motion for Revocation of Probation, Resentencing and Issuance of Bench Warrant" based on Owens's failure to appear at the ASB and failure to notify his probation officer of any change of address.

HRS § 706–627 (1993) states:

**Tolling of probation.** (1) Upon the filing of a motion to revoke a probation or a motion to enlarge the conditions imposed thereby, the period of probation shall be tolled pending the hearing upon the motion and the decision of the court. The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court concerning the motion for purposes of computation of the remaining period of probation, if any. In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court makes a decision upon the motion in open court. During the period of tolling of the probation, the defendant shall remain subject to all terms and conditions of the probation except as otherwise provided by this chapter.

(2) In the event the court, following hearing, refuses to revoke the probation or grant the requested enlargement of conditions thereof because the defendant's failure to comply therewith was excusable, the defendant may be granted the period of tolling of the probation for purposes of computation of the remaining probation, if any.

The intent of this statute was to "prevent such situations" where "it is possible for a person's period of probation ... to run out pending a revocation hearing, thus making [the person] a free [person], even though [the person] may have committed acts justifying revocation of probation[.]" Hse. Stand. Comm. Rep. No. 450, in 1977 House Journal, at 1495. See also Sen. Stand. Comm. Rep. No. 1105, in 1977 Senate Journal, at 1295.

Also on March 27, 2001, after the State filed its motion, the court issued a bench warrant for the arrest of Owens to bring him to court to answer to a charge that he violated "2" and "4" of the terms and conditions of his probation. Although the following message was stamped on the face of the bench warrant: "URGENT SERVICE NEEDED DOMESTIC VIOLENCE," the bench warrant was not served until November 28, 2005, more than four years and eight months after its issuance. Owens was served on the island of Maui.

On December 15, 2005, Owens filed a "Motion to Dismiss for Violation of [Hawai'i Rules of Penal Procedure (HRPP) ] Rule 9".[2]

---

2. Hawai'i Rules of Penal Procedure (HRPP) Rule 9 (2006) states in part:

(c) *Execution or service and return.*

(1) By Whom. A warrant shall be executed by a police officer or by some other officer authorized by law....

(2) Territorial Limits. The warrant may be executed or the summons served at any place within the state.

(3) Manner.

(i) Warrant. The warrant shall be executed without unnecessary delay by the arrest of the defendant.... The officer executing the warrant shall bring the arrested person promptly before the court.

....

(4) Return.

(i) Warrant. On or before the date of the defendant's initial appearance after service of the warrant, the officer executing a warrant shall make return thereof to the court. At the request of the prosecutor any unexecuted warrant shall be returned and cancelled. A warrant returned unexecuted may be cancelled by

At the hearing on December 20, 2005, Owens advised the court that "I just want you to know I live on the island of Maui and I'm working right there six days a week. And I have three children, you know." The State offered no evidence that it attempted to execute the bench warrant. After the hearing on December 20, 2005, the court concluded that HRPP Rule 9 applies only to pre-conviction warrants, denied Owens's motion to dismiss, revoked Owens's probation, and sentenced him to one year of probation and seven days of imprisonment. On January 10, 2006, the court entered "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Violation of H.R.P.P. Rule 9". The conclusions of law state:

1. The language contained in Rule 9 of the [HRPP] indicates that the rule applies only to pre-conviction situations....

2. The particular placement of Rule 9 within the [HRPP] indicates that the rule applies only to pre-conviction situations....

3. This matter is a post-conviction proceeding, ....

4. [HRS § 706–627] addresses the tolling of probation.... The existence of an independent tolling provision logically dictates that [HRPP] Rule 9 does not apply to probation proceedings.

5. .... [*State v. Mageo*, 78 Hawai'i 33, 889 P.2d 1092 (App.1995)] and [*State v. Lei*, 95 Hawai'i 278, 21 P.3d 880 (2001)] are clearly inapplicable to the case at bar. *Mageo* and *Lei* dealt with the issue of obtaining a defendant's presence in court for arraignment and plea and/or trial[.]

Owens filed a Notice of Appeal on January 17, 2006. On appeal, Owens challenges all of the CsOL. Owens argues that (1) the State violated HRPP Rule 9 when it failed to serve the bench warrant until more than four years and eight months after its issuance, and nearly four years after the expiration of Owens's probation; (2) the State must provide justification for its delay in serving the warrant; and (3) the State's failure to serve a summons or warrant "without unnecessary delay" amounts to a failure to prosecute with "due diligence."

On appeal, the State concedes that, in light of HRPP Rule 49 (2006),[3] HRPP Rule 9

the court, or may, at the request of the prosecutor made at any time while the charge is pending, be re-issued for execution.

3. HRPP Rule 49 (2006) states in part:

**Service of papers on parties and proof thereof; notice of entry of orders and judgments; filing of papers.**

(a) Service: When Required. All written submissions to the court, including ex parte motions, shall be served upon each of the parties promptly after filing, unless otherwise ordered by the court.

(b) Service: How Made. Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court.

(1) Service of Complaint, Indictment, Bench Warrant, Summons, or Subpoena. Service of the complaint, indictment, bench warrant, or summons shall be governed by Rule 9 of these rules. Service of a subpoena shall be governed by Rule 17 of these rules.

(2) Service of Other Papers. Service of papers other than complaint, indictment, bench warrant, summons or subpoena shall be made (a) by delivering a copy to the attorney or party; (b) by mailing it to the attorney or party at the attorney's or party's last known address; (c) if no address is known, by leaving it with the clerk of the court; or (d) if service is to be upon the attorney, by facsimile transmission to the attorney's business facsimile receiver.

(3) Delivery and Facsimile Transmission: How Made. Delivery of a copy within this rule means: handing it to the attorney or to the party; leaving it at the attorney's or party's office with a clerk or other person in charge thereof; if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Facsimile transmission means transmission and receipt of the entire document without error between the hours of 8:00 a.m. and 5:00 p.m. Hawai'i Standard Time on a court day with a cover sheet that states the attorney(s) to whom it is directed, the case name and court case number, and the title and number of pages of the document.

(4) Service: When completed. Service by mail is complete upon mailing. Service by facsimile transmission is complete upon receipt of the entire document by the receiving party's facsimile machine. Service by facsimile transmission that occurs after 5:00 p.m. shall be deemed to have occurred on the next court day.

applies to post-conviction bench warrants. The State argues, however, that although the family court "gave the wrong reason" for revoking probation, this court may affirm the order because it was the correct decision. *State v. Taniguchi*, 72 Haw. 235, 240, 815 P.2d 24, 26 (1991). The State argues that the court did not abuse its discretion by denying Owens's motion to dismiss because "Owens's own criminal conduct caused the delay in executing the warrant for his arrest and any attempt to serve the address on record would have been futile." Specifically, the failure of Owens to comply with the February 20, 2001 court order requiring him (a) to report in person on February 21, 2001, to the Adult Services Branch, and (b) to report any change of address to his probation officer before any such change, "left the [S]tate without the information needed to contact him causing the delay at issue."

In *Lei*, the Hawai'i Supreme Court stated, in relevant part:

> In the present case, there were delays of over two years in the execution of the bench warrants. HRPP Rule 9 requires that bench warrants, like penal summonses, be served "without unnecessary delay." HRPP Rule 9(c)(3)(i). Lei proffered evidence that he was available for service while the bench warrants were outstanding; there is no indication in the record that he intentionally avoided service. The prosecution did not adduce any evidence that it attempted to serve Lei during that time, nor did it establish that an attempt to serve Lei would have been futile. Further, at least with regard to the May 9, 1996 bench warrant, the prosecution had opportunities to serve Lei without expending additional time or resources. The May 9 bench warrant could have been executed on May 18, 1996, when Lei was cited, or on May 20 and July 22, 1996, when he appeared in court for the May 18 citations. The failure to act upon these opportunities discredits the prosecution's argument that it acted diligently in attempting to serve the bench warrants. Except for the district court's judicial notice of the large volume of outstanding misdemeanor bench warrants, there is nothing in the record to indicate any reason for the lengthy delay in executing the bench warrants.
>
> The volume of misdemeanor bench warrants is a relevant consideration as to what constitutes a reasonable amount of time for execution . . . .
>
> However, the volume of outstanding warrants alone is insufficient to excuse the delays in the present case. The prosecution did not argue that the volume of outstanding warrants was unusually high due to exceptional circumstances. Cf. HRPP Rule 48(c)(2) (excluding periods of delay "caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances" (emphasis added)). There is no indication in the record that the prosecution made any attempts whatsoever to execute the bench warrants and Lei proffered evidence that he was available for service. Under such circumstances, it cannot be said that the delay in executing the bench warrants was necessary. Therefore, we hold that the trial court abused its discretion in failing to dismiss the charges based on HRPP Rule 9.

95 Hawai'i at 286–87, 21 P.3d at 888–89 (footnote omitted).

(c) Proof of Service. Proof of service of complaint, indictment, bench warrant, and penal summons shall be governed by Rule 9 of these rules. Proof of service of papers other than the complaint, bench warrant or summons may be made by written acknowledgment of service, by affidavit or declaration of the person making service, or by any other proof satisfactory to the court, unless otherwise provided by law.

Proof of service by facsimile transmission shall be made by a certificate of service which declares that service was accomplished by facsimile transmission to a specific phone number, on a specific date and time, and which either (a) attaches the written confirmation from the sender's facsimile machine that confirms the document was received in its entirety and without error; (b) certifies that the sender called the office being served and obtained verbal confirmation that the document was received.

(d) Relief upon failure to receive due notice. A party who has failed to receive due notice or to be served, or who has been prejudiced by reason that service was made by mail or facsimile transmission, may apply to the court for appropriate relief.

HRPP Rule 9(c)(3)(i) requires that bench warrants be served "without unnecessary delay." *Lei* is precedent that the following periods of time are considered to be periods of necessary delay in serving the bench warrant: (a) periods when the volume of outstanding warrants is unusually high due to exceptional circumstances; (b) periods when the defendant was not reasonably available for service; and (c) periods when reasonable but unsuccessful attempts were made to serve the bench warrant.[4]

4. In the answering brief, Plaintiff–Appellee State of Hawai'i cites various precedents including the following:

> Many courts have recognized limits on the period within which a warrant for a probationer's arrest may be executed. This circuit has taken the position that a warrant for arrest based on a probation or parole violation should be executed within a reasonable time after issuance. *See Nicholas [v. U.S.]*, 527 F.2d [1160] at 1161–62[ (9th Cir.1976)]; *McCowan v. Nelson*, 436 F.2d 758, 760 (9th Cir.1970). In *Greene v. Michigan Department of Corrections*, 315 F.2d 546 (6th Cir.1963), the Sixth Circuit remanded a judgment of parole violation for a determination whether the parole board proceeded with reasonable diligence to issue and execute the warrant on the grounds that "[f]ailure to do so may result in a waiver of the violation and loss of jurisdiction." *Id.* at 547. We agree that the mere issuance of a warrant does not indefinitely extend the sentencing court's jurisdiction over a probation violation. A court must examine all the circumstances of the case to determine whether the warrant was executed within a reasonable time.
>
> In this case, the warrant remained outstanding for more than two and one-half years before it was executed. The United States does not present any justification for its failure to execute the warrant, nor is any apparent in the record. We find that this delay was unreasonable, and we hold that the district court lost jurisdiction to proceed on Hill's probation violation. Hill did not contribute to this delay. Although the probation office knew his address and would easily have located him, no effort was ever made to serve him with the warrant. When he learned of its existence, he promptly surrendered himself.

*United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir.1983).

> Does the former version of [Criminal Procedure Law (CPL)] 30.30(4)(c) require the People to exercise due diligence to locate an absent defendant when that defendant is incarcerated in a correctional facility within the State under an assumed name? We conclude that such diligence is not required when the facts and circumstances, including the accused's use of one or more aliases, indicate an intention to avoid prosecution.
> . . . .
> At the time of the decisions below, CPL 30.30(4) (former [c]) permitted the People to exclude from the time in which they must become ready the period of delay between the issuance of a bench warrant and the defendant's return on that warrant "where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance". The quoted portion of the CPL 30.30(4) (former [c]) exclusion is available even where there was no causal relationship between the defendant's absence or unavailability and the People's unreadiness. Critical to the operation of the exclusion is the statutory definition of the terms "absent" and "unavailable":
>
> > "A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence. A defendant must be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence" (emphasis supplied).

*State v. Sigismundi*, 89 N.Y.2d 587, 589–91, 657 N.Y.S.2d 381, 679 N.E.2d 620, 621–22 (N.Y. 1997). (Internal citation and footnote omitted.)

> [Superior Court Criminal Rule (CrR)] 3.3(b) provided that a defendant who obtained pretrial release shall be brought to trial within 90 days of his preliminary appearance.
>
> The 90–day speedy trial period would have started on the day of Larsen's scheduled arraignment in March 1978 if he had appeared. The only question is whether the speedy trial period began anew in January 1979 because Larsen was "absent and thereby unavailable" in the interim. Former CrR 3.3(f). We hold that it did begin anew, and that Larsen was therefore brought to trial in timely fashion.
>
> Before the State can rely on former CrR 3.3(f), it must demonstrate "good faith and diligent efforts to obtain the availability of the defendant." *State v. Peterson*, 90 Wash.2d 423, 428, 585 P.2d 66, 69 (1978); *State v. Alexus*, 91 Wash.2d 492, 588 P.2d 1171 (1979). Here, the State in full compliance with the court rules obtained a summons for Larsen's appearance, served it by mail, and then obtained a warrant for his arrest. CrR 2.2(a), (b)(2), (d)(2). We hold that even though the State could in fact have located Larsen either through his attorney, or through his parents, whose address was known, its actions in trying to locate him were sufficient to constitute a diligent, good faith effort. We agree with Judge Hansen who observed as follows in his memorandum opinion denying the motion to dismiss:
>
> > *State v. Alexus*, 91 Wash.2d 492, (588 P.2d 1171), and the ABA standards notwithstanding, the law of this state has not yet reached the point where the Prosecuting Attorney, o

In this case, there is no evidence of any period when the volume of outstanding warrants was unusually high due to exceptional circumstances or the prosecution made reasonable but unsuccessful attempts to serve the bench warrant. The court did not determine whether there was any period when the defendant was not reasonably available for service.

In essence, the prosecution seeks to add the periods when Owens was failing to comply with requirements "2", "3", and "4" of the Terms and Conditions of Probation quoted above as periods of necessary delay in serving the bench warrant.

We are presented with a situation where (a) Owens would have been timely served with the motion, and the bench warrant would not have been necessary, had Owens not been in violation of "3" and "4" of the terms and conditions of his probation, and (b) if the periods of time that Owens was in violation of these terms and conditions of probation are not tolled, the State will be in violation of the requirement of HRPP Rule 9(c)(3)(i) that bench warrants be served "without unnecessary delay." In this situation, notwithstanding the facts that (a) HRS § 706–627 quoted above does not identify any

of these periods of time as tolled time, and (b) HRPP Rule 9 does not so specify, we conclude that the violation by Owens of "3" and "4" of the terms and conditions of his probation are periods of necessary delay in serving the bench warrant on him. This conclusion is based on a policy that a person on probation should not be allowed to benefit from not being timely served a bench warrant issued because one or more terms and conditions of the person's probation were violated when, but for such violation(s) of probation, the person would have been served with a motion for revocation of probation and the bench warrant would not have been necessary.

Accordingly, we affirm the December 20, 2005 Revocation of Probation; Order of Resentencing. We affirm the January 10, 2006 "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Violation of H.R.P.P. Rule 9," except we vacate Conclusions of Law nos. "1", "2", "4", and "5" because they are wrong.

the law enforcement agencies, have to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information. "Good faith diligent efforts to locate the defendant" are satisfied by sending a letter to the defendant at his last known address. To require more would involve the Court in the never ending search for the answer to the question, "How much is enough?" When is, "Good faith and diligent effort" satisfied? Does the Prosecutor have to ask neighbors? How many neighbors? Does the Prosecutor have to search out the relatives? If so, which ones, father, mother, brother, sister, uncles, aunts, cousins? Does the Prosecutor have to check the local State Unemployment Office, the local Health District? The possibilities are endless, and the obvious fact is that no prosecutor's office staff has the capacity to make even a cursory search. It appears in this case that had the Prosecutor's office asked the defendant's attorney where the defendant might be located, he could have received an answer. It is possible that if he had asked the courthouse cleaning lady she would have known, but it did not occur for

him to ask either. After the fact knowledge cannot be used to set the parameters of the initial inquiry.

Larsen contends that *State v. Peterson, supra, State v. Alexus, supra,* and *State v. Hattori,* 19 Wash.App. 74, 573 P.2d 829 (1978) support his position that the State failed to exercise due diligence in trying to locate him. We do not agree.

*Peterson* and *Alexus* both found violations of CrR 3.3. However, in *Peterson* at 426, 585 P.2d at 68, "(t)he record fails to reflect **any** action by the prosecutor designed to bring respondent to trial ... and appellant concedes that ... no effort was made to locate, and determine the availability of, the respondent." .... Similarly, in *Alexus* at 496, 588 P.2d at 1173, "the prosecutor made **absolutely no effort** to locate Alexus during the 6 months following filing of the information." .... *Hattori* has no application to the facts of this case. There, the only speedy trial question was whether a 2–week period between Hattori's waiver of extradition in California and his subsequent return to Washington was includable in the speedy trial timetable. *State v. Perry,* 25 Wash.App. 621, 622–624, 612 P.2d 4, 5–6 (Wash.Ct.App.1980). (Emphasis in original.)