172 P.3d 484
**STATE Of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**Charlie OWENS, Jr., Petitioner/Defendant–Appellant.**

**No. 27714.**

Supreme Court of Hawai'i.

Nov. 19, 2007.

---

Nathan Kanale Sadowski, Deputy Public Defender, for petitioner/defendant-appellant.

Anne K. Clarkin, Deputy Prosecuting Attorney (Sonja P. McCullen, Deputy Prosecuting Attorney, on the brief), for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

### Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Charlie Owens, Jr. (Petitioner) filed an application for writ of certiorari on July 12, 2007, requesting that this court review the April 13, 2007 judgment of the Intermediate Court of Appeals (the ICA), issued pursuant to its February 5, 2007 opinion [1] that affirmed the December 20, 2005 Revocation of Probation; Order of Resentencing of the Family Court of the First Circuit [2] (the court), and its January 10, 2006 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Violation of Hawai'i Rules of Penal Procedure (HRPP) Rule 9, except that Conclusions of Law Nos. 1, 2, 4, and 5 were vacated because they were

wrong. *State v. Owens*, 113 Hawai'i 472, 477, 155 P.3d 655, 660 (App.2007). Petitioner's application was accepted on August 10, 2007, and oral argument was heard on October 31, 2007.

Petitioner presents the following question in his application:

Whether, despite its recognition that under *State v. Mageo*, 78 Hawai'i 33, 889 P.2d 1092 (App.1995)[,] and *State v. Lei*, 95 Hawai'i 278, 21 P.3d 880 (2001), Rule 9(c)(3)(i) of the [HRPP] clearly requires [Respondent/Plaintiff–Appellee State of Hawai'i (Respondent)] to serve a bench warrant on a probationer "without unnecessary delay," the ICA gravely erred in affirming the order revoking [Petitioner's] probation based on the erroneous conclusions *that the alleged violation of the terms and conditions of probation, which are alleged to have preceded the issuance of the bench warrant, amounted to "periods of necessary delay" in service* and in the absence of any factual record to support the conclusion that [Petitioner] had violated a substantial condition of probation.

(Emphasis added.) [3]

We hold, respectfully, that the ICA's April 13, 2007 judgment issued pursuant to its February 5, 2007 opinion is reversed, because (1) HRPP Rule 9 requires Respondent to serve warrants in both pre-conviction and post-conviction contexts without unnecessary delay, (2) Respondent's delay of nearly five years in serving Petitioner with a bench warrant for his arrest amounted to an unnecessary delay under HRPP Rule 9 where Petitioner was available for service in the jurisdiction of this state over the period of non-service, there was no evidence that Petitioner intentionally avoided service, and there was no evidence that attempts had been made by Respondent to serve Petitioner over the nearly five-year period, and (3) Respondent's duty to comply with HRPP Rule 9 in the service of the bench warrant is not excused by Petitioner's failure to obey a

---

1. The published opinion was authored by Chief Judge James S. Burns and joined by Associate Judges Corinne K.A. Watanabe and Craig H. Nakamura.

2. The Honorable Russell S. Nagata presided.

3. Respondent did not file a memorandum in opposition.

court order that resulted in the issuance of the bench warrant.

## I.

On February 20, 2001, Petitioner was charged by complaint with Abuse of Family and Household Members, Hawaiʻi Revised Statutes (HRS) § 709–906 (Supp.2001). He pled guilty on the same day and was sentenced to one year probation, *inter alia,* and ordered to appear on February 21, 2001, for an intake interview at the Adult Services Branch (ASB).

Petitioner failed to report to the ASB on February 21, 2001, for the intake interview. The ASB then mailed him a Noncompliance Report, which said Petitioner was "hereby requested to be present at 10:30 a.m. on Tuesday, the 13th day of March 2001" at the ASB. The ASB letter was returned, stamped "RETURN TO SENDER," and the phrase "no longer at this address" was written on the envelope.

Respondent then filed a "Motion for Revocation of Probation, Resentencing and Issuance of Bench Warrant" (MRP) on March 27, 2001, when Petitioner did not appear at the ASB and did not notify his probation officer of any address change. On the same day, the court issued a bench warrant for Petitioner's arrest. The bench warrant was stamped "URGENT SERVICE NEEDED DOMESTIC VIOLENCE." Despite this statement, no attempts were made to serve the bench warrant on Petitioner from March 27, 2001, to November 28, 2005. The warrant was served on Petitioner on November 28, 2005, on Maui, four years and eight months later.

On December 15, 2005, Petitioner filed a motion to dismiss for violation of HRPP Rule 9.

According to Petitioner the following procedural matters took place:

> [T]wo separate matters concerning [Petitioner were] set for hearing in the [f]amily [c]ourt on December 20, 2006. *The first hearing addressed [Petitioner's] Motion to Dismiss for Violation of HRPP Rule 9, filed December 15, 2005. The subsequent hearing addressed [Respondent's] Motion for Revocation of Probation, Resentencing and Issuance of Bench Warrant, filed March 27, 2001.* [Petitioner's] Motion to Dismiss was heard first because, if granted, it would have dismissed [Respondent's m]otion. . . .
>
> *During the hearing on [Petitioner's Motion to Dismiss], there were no witnesses called, no sworn testimony taken and the court did not take judicial notice of anything.*

(Emphases added.) Petitioner states that the court's decision was rendered as follows:

> In its decision the court stated, "I guess the dates would be stipulated by the parties since there's no—there's no disagreement about dates and also there's no disagreement that [Petitioner] was at least present in the jurisdiction and that they made—no attempts were made to serve that probation revocation motion on [Petitioner] during that period of time." The dates later reduced to written findings were 1) February 20, 2001, when [Petitioner] was sentenced to one-year probation, 2) March 27, 2001, when [Respondent] filed a Motion for Revocation of Probation, Resentencing, and Issuance of a Bench Warrant and 3) November 28, 2005, when [Petitioner] was finally served with the warrant. *In its written [conclusions of law (conclusions) ], the [court] held that 1) HRPP Rule 9's language indicated that it only applies in the pre-conviction context, 2) HRPP Rule 9's placement within the HRPP indicates it only applies pre-conviction, 3) [Petitioner's] matter was a post-conviction proceeding, 4) [HRS] § 706–627's tolling of probation provision logically dictates that HRPP Rule 9 does not apply to probation proceedings[,] and 5) [Mageo] and [Lei] . . . do not apply[.]*

(Emphases added.)

On December 20, 2005, the court denied Petitioner's Motion to Dismiss for violation of HRPP Rule 9. HRPP Rule 9 states in relevant part that "[t]he warrant shall be executed without unnecessary delay by the arrest

of the defendant." [4]

Petitioner relates that "[s]ubsequent to the first matter, [Petitioner] did not contest [Respondent's MRP]." Petitioner declares he "waived his right to a hearing on the [MRP] because" as he stated at the MRP hearing, "To tell you the truth, I don't recall. It was so long ago I don't remember what was going on. It was—I think it was eight years, five years." Petitioner stipulated to the MRP "provided that [he was] reserving [his] right to appeal [his] motion to dismiss for violation of [HRPP] Rule 9." Thus Petitioner waived his right to a MRP hearing. At sentencing Petitioner "informed the court ... that he had never absconded from the jurisdiction ... '[a]nd I have been here and I have been working and I never left the state.' "

## II.

In Petitioner's application for writ of certiorari he argues the ICA's affirmance of the court's judgment should be overturned because (1) "HRPP Rule 9 requires [Respondent] to serve a bench warrant on [Petitioner] with due diligence," and (2) "as HRPP Rule 9 applies, the [court's] 1/10/06 Order must be reversed and [Petitioner's] motion to dismiss [Respondent's] MRP must be granted" inasmuch as (a) "[u]nder the standard articulated in *Lei,* [Respondent's] failure to attempt to serve the warrant on [Petitioner] constitutes 'unnecessary delay' as it clearly infringes on his basic constitutional due process rights," (b) "[t]he ICA gravely erred in affirming the 12/20/05 Revocation of Probation because the ICA's determination that HRPP Rule 9 applied to [Petitioner's] case and that there was no evidence that [Respondent] exercised due diligence in attempting to serve the warrant on [Petitioner] required that the MRP be denied" and (c) "[t]he ICA gravely erred in making erroneous conclusions that [Petitioner] violated his probation based on unproven facts outside of the evidentiary record." [5]

In its answering brief filed July 19, 2006, Respondent averred that (1) "[Respondent] agrees with [Petitioner], albeit for different reasons, that HRPP Rule 9 is applicable to the bench warrant in the instant case," and that (2) "[n]otwithstanding the applicability of HRPP Rule 9, the court did not abuse its discretion by denying [Petitioner's] motion to dismiss" inasmuch as (a) "[Petitioner's] own criminal conduct caused the delay at issue, [and] his reliance on *Mageo* and *Lei* is misguided," and (b) "[b]ecause [Petitioner's] own criminal conduct caused the delay at issue, his reliance on *Nguyen [v. State,* 109 S.W.3d 820 (Tex.App.2003) ] is misguided," [6] and "[o]ther jurisdictions [hold otherwise]."

In reply, filed August 17, 2006, Petitioner argued (1) "[a]s [Respondent] now concedes that its duty of due diligence to serve warrant applies to the post-conviction bench warrant served on [Petitioner] after nearly four

---

**4.** HRPP Rule 9(c)(3)(i) in its entirety states as follows:

*The warrant shall be executed without unnecessary delay by the arrest of the defendant.* The officer need not have the warrant in the officer's possession at the time of arrest, but upon request, the officer shall show the warrant to the defendant as soon as possible. If the officer does not have the warrant in the officer's possession at the time of the arrest, the officer shall then inform the defendant of the offense charged and of the fact that a warrant has been issued. The officer executing the warrant shall bring the arrested person promptly before the court.

(Emphasis added.)

**5.** In Petitioner's opening brief, filed June 1, 2006, Petitioner alleges (1) "[t]he court erred by failing to grant [Petitioner's] motion to dismiss for [Respondents'] failure to exercise due diligence in serving [Petitioner] for a period of four years, eight months in violation of his due pro-

cess rights as embodied by HRPP Rule 9'' inasmuch as (a) "[t]he court erroneously concluded, without ruling on the evidentiary issues, that HRPP Rule 9 was limited to a pre-conviction context," and (b) "[t]he court erred in concluding that Rule 9's application post-conviction would nullify HRS § 706–627,'' and that (2) "[p]ost-conviction due process rights derived from the liberty interest are guaranteed in U.S. and Hawai'i Law" inasmuch as (a) "[p]ost-conviction due process rights are well established in this jurisdiction," (b) "[d]ue process requires that probation revocation warrants be served with due diligence," and (c) "[t]he court erred in concluding that Rule 9 provided no due process protection once a determination of guilt was made."

**6.** In his application, Petitioner does not mention *Nguyen* and so that case is not discussed.

years delay, [Petitioner's] motion to dismiss must be granted," and (2) "[t]he record contains sufficient factual information to determine that [Respondent] failed its duty to serve the bench warrant within the time required by Rule 9" because "[a] thorough examination of the case law cited by [Respondent] reaffirms the fact that [Respondent] failed to serve the warrant on [Petitioner] with due diligence."

### III.

As to the first argument in his application, Petitioner maintains that "[t]he [court] clearly erred by concluding that HRPP Rule 9 has no application in the post-conviction context." In its order denying the motion to dismiss, the court stated in pertinent part that HRPP Rule 9 only applied to post-conviction proceedings as follows:

1. The language contained in Rule 9 of the [HRPP] ("Rule 9") indicates that the rule applies only to pre-conviction situations.... [S]ubsection (a)(2) states[,] ... ["N]o warrant shall issue *upon a complaint ....*" ( [E]mphasis added[.] )

Second, subsection (b)(1) states in pertinent part: "the warrant ... shall ... *describe the offense alleged in the charge*[.]" ( [E]mphasis added[.] ) ...

2. ... Rule 9 ... is preceded by Rule 7 ... [and b]oth Rule 7 and Rule 9 are contained in Section III, which addresses "the charge." ... Rule 9 is followed by Rules 10 through 17.1 contained in Section IV, which addressed "arraignment and preparation for trial." From a contextual standpoint, Rule 9 ... applies to obtaining the appearance of the defendant prior to trial.

. . . .

4. Section 706–627 of the [HRS] addresses the tolling of probation.... The existence of an independent tolling provision logically dictates that Rule 9 does not apply to probation proceedings.

5. ... *Mageo* and *Lei* dealt with ... matters that had not yet been adjudicated....

However, in its answering brief Respondent contends that HRPP Rule 9, "when read *in pari materia* with HRPP Rules 1, 2, and 49, is applicable to the bench warrant in the instant case[,]" and applies to both pre-conviction and post-conviction proceedings. Summarized, Respondent's analysis is as follows:

HRPP Rule 1 provides that "[t]hese rules shall govern the procedure in the courts of the State in *all penal proceedings,* with the exceptions stated in Rule 54." HRPP Rule 1. HRPP Rule 2 then provides that "[t]hese rules are intended to provide for the just determination of *every penal proceeding.* They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

... HRPP Rule 49(b)(1) provides in relevant part that "[s]ervice of the complaint, indictment, *bench warrant,* or summons *shall be governed by rule 9 of these rules*" and HRPP Rule 49(c) provides in relevant part that "[p]roof of service of complaint, indictment, *bench warrant,* and penal summons *shall be governed by rule 9 of these rules.*" HRPP Rule 49(c). A bench warrant is defined as a "[p]rocess issued by the court itself, or 'from the bench,' for the attachment or arrest of a person; either in case of contempt, or where an indictment has been found, or to bring in a witness who fails to obey a subpoena." *Black's Law Dictionary* 156 (6th ed.1990). *In the instant case, the court issued a bench warrant for [Petitioner's] arrest.... HRPP Rule 49 explicitly provides that service of such a bench warrant shall be governed by HRPP Rule 9. As such, when HRPP Rule 9 is read in pari materia with HRPP Rules 1, 2, and 49, HRPP Rule 9 is applicable to the post-conviction bench warrant in the instant case. ...*

... [T]he existence of a tolling statute does not logically dictate that HRPP Rule 9 is inapplicable to probation proceedings.... HRS § 706–627 tolls the period of probation because without a tolling provision, "it was possible for the period of probation ... to run out before termination of the hearing, relieving the defendant of any further obligation even though the defendant may have committed acts

justifying change in the defendant's probation...." Commentary on HRS § 706–627. HRPP Rule 9(c)(3)(i), on the other hand, requires that a warrant be executed "without unnecessary delay." *Because HRS § 706–627 and HRPP Rule 9(c)(3)(i) do not speak to the same matter, the mere existence of HRS § 706–627 does not render HRPP Rule 9 inapplicable to probation proceedings.*

(Some emphases in original and some added.) As Respondent concludes, then, "[the HRPP] apply to all penal proceedings. Thus, any distinction between pre-conviction proceedings and post-conviction proceedings is irrelevant." As set forth above, Respondent's analysis is cogent and correct.

## IV.

### A.

With respect to Petitioner's second argument, because HRPP Rule 9 applies, Respondent was obligated to serve Petitioner the warrant without unnecessary delay. The parameters of a violation of HRPP Rule 9 were first discussed in *Mageo*. In *Mageo*, the defendant was cited for driving without proof of insurance on July 12, 1989, October 9, 1989, and March 8, 1991. 78 Hawai'i at 34, 889 P.2d at 1093. The defendant did not report to court in response to the citations and penal summonses were issued for him on August 1, 1989, November 1, 1989, and April 5, 1991, for the citations, respectively. *Id.* There was no record of the summonses being served, returned unserved, cancelled, or reissued for service. *Id.* The summonses were not served until over two years had passed. *Id.* The district court dismissed the case and the ICA in *Mageo* upheld the dismissal. *Id.* at 35, 889 P.2d at 1094.

*Mageo* said the trial court must balance the " 'interest of the state against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system.' " [7] *Id.* at 37, 889 P.2d at 1096 (quoting *State v. Moriwake*, 65 Haw. 47, 56, 647 P.2d 705, 712 (1982) (internal quotation

marks and other citation omitted)). Similar to the court's reference to Petitioner being present in the jurisdiction, the defendant in *Mageo* indicated to the court that "he had been in Hawai'i since 1989[, *i.e.*, the entire time the summonses were outstanding,] and had not left the State." *Id.* at 34, 889 P.2d at 1093. *Mageo* noted that "[t]he record indicates the Defendant was available for service in the jurisdiction over the period of nonprosecution and there is no evidence Defendant intentionally avoided service." *Id.* at 38–39, 889 P.2d at 1097–98.

In *Mageo* the ICA declared that, "under the facts, we fail to see any viable basis for holding that the State, after the long unexplained delay, may be rewarded with an opportunity to reinstate the case, thus engendering further delay and the usurpation of the orderly and prompt disposition of criminal cases." *Id.* at 38, 889 P.2d at 1097. That court explained that the State's interest was outweighed by its failure to timely prosecute and the orderly functioning of the court system:

> [W]e acknowledge the State's interest in punishing criminal conduct. *That is clearly outweighed, however, by the State's failure to timely prosecute and by its impact on the orderly functioning of the court system.* There was a delay of over two years from the issuance of the penal summonses to the prosecution of the case. *No explanation for the delay appears in the record. The State offered no written memoranda or oral offer of proof at the hearing to explain the delay, and the record is devoid of any reason for delay* in service of the summonses.

*Id.* (emphases added). Accordingly dismissal was affirmed.

### B.

This court subsequently adopted the *Mageo* test in *Lei*. In *Lei* this court summarized the ICA's analysis in *Mageo* as "focus[ing] primarily upon whether the defendant was

---

**7.** *Mageo* indicated that, "[i]n the future, trial courts exercising this power should issue written factual findings setting forth their reasons for dismissal with prejudice so that a reviewing court may accurately assess whether the trial court duly exercised its discretion." 78 Hawai'i at 38, 889 P.2d at 1097 (citation omitted).

178

amenable to service while the penal summonses were outstanding and whether there was a reason for the delay in serving the summonses." *Lei*, 95 Hawai'i at 285–86, 21 P.3d at 887–88.

There, the district court denied the defendant's motion to dismiss for unnecessary delay in serving arrest warrants that extended more than two years. On appeal by the defendant this court reversed the district court for abuse of discretion. This court reiterated that "[w]e acknowledge the State's interest in punishing criminal conduct. That is clearly outweighed, however, by the State's failure to timely prosecute," *id.* at 285, 21 P.3d at 887 (quoting *Mageo*, 78 Hawai'i at 38, 889 P.2d at 1097), under the circumstances. As in *Mageo*, no bright-line rule for what constituted "unreasonable delay" was established in *Lei*.[8] However, in determining whether "unreasonable delay" had occurred in violation of HRPP Rule 9, this court, as did *Mageo*, focused on whether the defendant was amenable to service of the warrants during the period they were outstanding and whether there was a reason for delay in serving the warrants. *Lei*, 95 Hawai'i at 286, 21 P.3d at 888. This determination involved inquiry into whether the defendant was "available for service while the bench warrants were outstanding[,]" whether there was "indication in the record that [the defendant] intentionally avoided service[,]" whether the prosecution could "adduce any evidence that it attempted to serve [the defendant] during that time"; and whether the prosecution could "establish that an attempt to serve [the defendant] would have been futile." *Id.* Accordingly this court held "that the trial court abused its discretion in failing to dismiss the charges based on HRPP Rule 9." *Id.* at 287, 21 P.3d at 889.

## V.

▪ Petitioner's case is similar to *Mageo*. First, Petitioner maintained there was a violation of his due process rights. According

to Petitioner the five years' passage inhibited his ability to confront any witnesses against him and the fading of memory that accompanies the passage of time made it more difficult to defend himself.

Second, like the defendant in *Mageo*, Petitioner failed to respond to a court order to appear. Subsequently in *Mageo*, a summons was issued. In the instant case, a bench warrant was issued after a failure to report in accordance with a condition of probation. Similar to *Mageo*, in this case there is no record of an attempt to serve the warrant and no record of any followup attempts to serve over the nearly five-year period. In both cases, the defendants were apparently present in the jurisdiction during the time the warrants were outstanding, and there was no evidence the defendants intentionally avoided service. As in *Mageo*, here Respondent had no explanation for the delay in service after the warrant was issued. Under *Mageo*, then, the delay of nearly five years in serving Petitioner with a warrant for his arrest amounts to an unnecessary delay in prosecution, warranting dismissal.

## VI.

In its answering brief, Respondent contends, however, that "[Petitioner's] failure to follow the terms and conditions of his probation during February and March 2001 left [Respondent] without the information needed to contact him causing the delay at issue." Specifically, Petitioner failed "to (1) appear in person at ASB on February 21, 2001, in violation of the court's order and the terms and conditions of his probation, and (2) notify his probation officer of any changes in his mailing address before any such change, in violation of the terms and conditions of his probation[.]" According to Respondent, "[Petitioner's] own criminal conduct caused the delay in executing the warrant for his arrest and any attempt to serve the address on record would have been futile." Thus,

8. While Petitioner seems to posit that a two-year delay is an unnecessary delay per se, and prior decisions have made mention of delays of more than two years, this state has never adopted such a bright-line temporal rule. *See Lei*, 95 Hawai'i at 286, 21 P.3d at 888; *Owens*, 113 Hawai'i at 476, 155 P.3d at 658; *State v. Deryke*, 113 Hawai'i 120, 126, 148 P.3d 1222, 1228 (App.2006) (Foley, J., dissenting) (citing *Lei*, 95 Hawai'i at 286 n. 7, 21 P.3d at 888 n. 7), *cert. denied*, 114 Hawai'i 161, 158 P.3d 279 (2007); *Mageo*, 78 Hawai'i at 38, 889 P.2d at 1097.

Respondent argues, "Because the delay was due to [Petitioner's] own criminal behavior, there was no unnecessary delay on the part of the [Respondent]."

█ It may be observed that Respondent produced no facts to support this allegation. Respondent failed to adduce any evidence at all that Petitioner's failure to report to the probation officer or the returned letter from the probation department marked "return to sender" affected its ability to serve Petitioner after the warrant was issued. Such matters, in fact, *preceded* the issuance of the warrant. This court has never held that delay in serving the warrant under HRPP Rule 9 because of alleged pre-warrant issuance conduct is to be considered in determining whether a warrant *subsequently* issued was served with unnecessary delay. The reason is obvious. To hold otherwise would render HRPP Rule 9 a nullity. The HRPP Rule 9 requirement that unnecessary delay be avoided refers to delay in *serving the warrant* and, thus, such delay is measured after the warrant is issued.

Significantly, Respondent does not contest the court's statement that Petitioner was present in the jurisdiction and Respondent made no attempt to serve him. Indeed, Respondent does not indicate what, if any attempts it made to serve over the nearly five year period. Thus, Respondent only speculates that "it would have been futile" to serve under these circumstances. As in *Lei*, Respondent did not attempt to "adduce *any* evidence that it attempted to serve" Petitioner during the subject period. 95 Hawai'i at 286, 21 P.3d at 888 (emphasis added). Under such circumstances Respondent's interest in prosecution "[was] clearly outweighed ... by ... [its] failure to timely prosecute and by the impact on the orderly functioning of the court system." *Mageo*, 78 Hawai'i at 38, 889 P.2d at 1097.

## VII.

█ The ICA apparently agreed with Respondent. Citing *Lei*, the ICA declared that periods of necessary delay in serving a bench warrant are: "(a) periods when the volume of outstanding warrants is unusually high due to exceptional circumstances; (b) periods

when the defendant was not reasonably available for service; and (c) periods when reasonable but unsuccessful attempts were made to serve the bench warrant." *Owens*, 113 Hawai'i at 476, 155 P.3d at 659.

As to (a) and (c), the ICA conceded that, "[i]n this case, there is no evidence of any period when the volume of outstanding warrants was unusually high due to exceptional circumstances or the prosecution made reasonable but unsuccessful attempts to serve the bench warrant." *Id.* at 477, 155 P.3d at 660. As to (b), the ICA found, however, that "[Petitioner] would have been timely served with the motion, and *the bench warrant would not have been necessary,* had [Petitioner] not [violated probation]" and, thus, ruled that "the violation by [Petitioner] of [his terms of probation] are periods of necessary delay in serving the bench warrant on him." *Id.* (emphasis added). The ICA's reasoning was purportedly based on a policy that:

> [A] person on probation should not be allowed to benefit from not being timely served a bench warrant issued because one or more terms and conditions of the person's probation were violated when, *but for such violation(s) of probation, the person would have been served with a motion for revocation of probation and the bench warrant would not have been necessary.*

*Id.* (emphasis added).

### A.

As mentioned before, under the ICA's theory, there could never be unreasonable delay under HRPP Rule 9 if the failure to obey a court order that resulted in the issuance of the arrest warrant counts as a necessary period of delay. As in this case, neither Mageo nor Lei responded to court orders to appear. Thereafter, bench warrants were issued. *Mageo*, 78 Hawai'i at 34, 889 P.2d at 1093.

*Mageo* also considered whether the defendant was available for service and whether he intentionally avoided service, but never suggested the defendant's failure to appear at court, necessitating issuance of the warrant, started a necessary period of delay

running under HRPP Rule 9. *Mageo*, 78 Hawai'i at 38–39, 889 P.2d at 1097–98.

That Petitioner failed to appear pursuant to court order is not germane to the analysis under HRPP Rule 9, except as the ground for initiating the summons or arrest warrant. It is the reasons for the delay engendered *after* the arrest warrant is issued that are pertinent to whether "execut[ion]" of the warrant was accomplished "without unnecessary delay by the arrest of the defendant" under HRPP Rule 9. In both *Mageo* and *Lei*, dismissal was upheld because there was an undue delay in failing to serve the summons or warrant in a timely fashion in the absence of evidence the defendants were avoiding service.

### B.

Additionally, if as the ICA contends, "but for" the probation violation, "the person would have been served with a" revocation motion and the bench warrant would not have been necessary, HRPP Rule 9 would not have been in issue at all. As Petitioner argues, the ICA blurs the difference between a HRPP Rule 9 hearing and a hearing to revoke probation. Petitioner maintains that "[i]n a HRPP Rule 9 hearing, the court's inquiry focuses on the state's duty of due diligence ... [whereas i]n a MRP hearing, the court's inquiry focuses on whether the Defendant has inexcusably failed to comply with a substantial term of probation."

Petitioner contends that "[i]f [Respondent] had failed its duty to serve the bench warrant according to the law, then the MRP would have been dismissed...." Secondly, if Respondent proved the delay in service was not unfair, "then the court could address [Respondent's MRP] in a separate hearing to determine if [Petitioner] had inexcusably failed to comply with the terms and conditions of his probation."

The probation violations cannot be denominated as "periods when the defendant was not reasonably *available for service*," *Owens*, 113 Hawai'i at 476, 155 P.3d at 659 (emphasis added), for HRPP Rule 9 periods relate to the period *after the issuance* of the arrest warrant. As stated by Petitioner, the faulty logic by the ICA "relieves [Respondent] of its burden of due diligence for a period of time that is more than twice as long as that contemplated in *Lei* despite an evidentiary record where there are no attempts to serve and there was no reason to believe [Petitioner] was not amenable to service." Respondent's lack of diligence in serving Petitioner for almost five years is uncontested. Respondent had no explanation for the delay in service. There is no evidence that Petitioner was not amenable to service *had an attempt at service been made.*

### VIII.

As to the third argument, Petitioner argues that "[t]he ICA included a number of supposed factual findings in its opinion that were never considered by the trial court, including many that were never asserted in written argument by any of the parties," and further that "in the absence of an evidentiary record, the ICA concluded that [Petitioner] didn't have permission to be in Maui and that he didn't go to Maui after his probationary term was already completed." According to Petitioner, "[n]one of those facts had been decided or even contemplated during the HRPP Rule 9 hearing." While it appears Petitioner is generally correct, in light of the foregoing analysis, further discussion of this argument is not required.

### IX.

Based on the foregoing, the ICA's April 13, 2007 judgment, the court's December 20, 2005 order revoking probation and order of resentencing, and its January 10, 2006 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss for Violation of HRPP Rule 9 are reversed.